PHILIP A. GASTEIER (SBN 130043)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: PAG@LNBYB.COM; JSK@LNBYB.COM
Attorneys for Edward M. Wolkowitz,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| PACIFIC THEATRES EXHIBITION CORP., et al., | Lead Case No.: 2:21-bk-15007-BB |
| Debtors and Debtors in Possession. | Jointly administered with:<br>2:21-bk-15008-BB (Pacific Theatres Entertainment Corporation)<br>2:21-bk-15009-BB (Pacific Cinemas Corporation)<br>2:21-bk-15010-BB (Glendale Americana Theatre, LLC)<br>2:21-bk-15011-BB (ArcLight Cinema Company)<br>2:21-bk-15012-BB (ArcLight Visions, Inc.) |
| ☐ Affects all Debtors | |
| ☒ Affects Pacific Theatres Exhibition Corporation only | |
| ☐ Affects Pacific Theatres Entertainment Corporation | |
| ☐ Affects Pacific Cinemas Corporation only | **CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING SALE OF ESTATE'S RIGHT, TITLE AND INTEREST IN LIQUOR LICENSES (GLENDALE AND GROVE), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; AND (B) APPROVING OVERBID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF EDWARD M. WOLKOWITZ IN** |
| ☐ Affects Glendale Americana Theatre, LLC only | |
| ☐ Affects ArcLight Cinema Company only | |
| ☐ Affects ArcLight Visions, Inc. only | |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUPPORT THEREOF**

DATE:        September 15, 2021
TIME:        11:00 a.m.
PLACE:       Courtroom "1539"
             255 East Temple Street
             Los Angeles, California 90012

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE:**

Edward M. Wolkowitz, the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estate ("Estate") of Pacific Theatres Exhibition Corp. (the "Debtor"), hereby files this motion (the "Motion") for entry of an order of the Court:

(A)     pursuant to 11 U.S.C. § 363(b) and (f), authorizing the Trustee to sell the Estate's right, title and interest in (i) a type-47 On-Sale General Eating Place License #47-562169 (the "Grove Liquor License"), in accordance with that certain *Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021* (together, the "Grove Agreement") between the Trustee and proposed buyer American Multi-Cinema, Inc., a Missouri corporation (or its nominee, the "Buyer"), a true and correct copy of which is attached as **Exhibit "3"** to the Declaration of Edward M. Wolkowitz annexed hereto (the "Wolkowitz Declaration"), and (ii) a type-47 On-Sale General Eating Place License #47-610831 (the "Glendale Liquor License," and collectively with the Grove License, the "Licenses"), in accordance with that certain *Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021* (together, the "Americana Agreement," and collectively with the Grove Agreement, the "Agreements") between the Trustee and the Buyer, a true and correct copy of which are attached as **Exhibit "4"** to the Wolkowitz Declaration, and free and clear of all liens, claims and interests, to the Buyer or a successful overbidder; and

(B)     approving the overbid procedures described in this Motion (the "Overbid Procedures").

Pursuant to the Agreements, the Buyer has agreed to purchase the Estate's right, title and interest in the Liquor Licenses (the "License Rights") for the purchase price of $85,000.00 for each Liquor License.

Pursuant to this Motion, the Trustee seeks authority to sell the License Rights to the Buyer, free and clear of liens, claims and interests, subject to overbid, and in accordance with the

terms and conditions set forth in the Agreements.  The Trustee also seeks Court approval of the Overbid Procedures described in the Motion in connection with the proposed sale of the License Rights, which the Trustee believes will maximize the price ultimately obtained for the License Rights and still protect the Estate from parties who may wish to bid on the License Rights but who are ultimately unable to consummate a purchase of the License Rights.

The Motion is based upon 11 U.S.C. § 363, Bankruptcy Rules 2002 and 6004, and Local Bankruptcy Rules 2002 and 6004-1, the accompanying Memorandum of Points and Authorities, the Wolkowitz Declaration submitted in support of the Motion, the entire record of the Debtor's bankruptcy case, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at, or prior to, the hearing on the Motion.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1.	finding that the notice given by the Trustee in connection with the sale of the License Rights and the hearing on the Motion is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

2.	granting the Motion in its entirety;

3.	approving the Overbid Procedures;

4.	authorizing the Trustee to sell the License Rights to the Buyer (or to a successful overbidder or overbidders), free and clear of all liens, claims and interests, pursuant to the terms and conditions set forth in the Agreements;

5.	finding that the Buyer (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

6.	authorizing the Trustee to execute and deliver any and all documents and take such actions as may be reasonably necessary to consummate the sale of the License Rights;

7.	authorizing the Trustee to pay consultation or finders' fees, if any;

8.	waiving the provisions of Bankruptcy Rule 6004 (h); and

///

///

9.      granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated:  August 19, 2021

EDWARD M. WOLKOWITZ,
CHAPTER 7 TRUSTEE

By:   */s/ Philip A. Gasteier*
        Philip A. Gasteier
        LEVENE, NEALE, BENDER, YOO
            & BRILL L.L.P.
        Attorneys for Edward M. Wolkowitz,
        Chapter 7 Trustee

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of this case and proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this sale motion are (i) Sections 105(a), 363(b), (f) and (m) of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2),  6004 (a), (c), (f) and (h), 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, and (iii) Local Bankruptcy Rules 6004-1 and 9013-1.

## II.

## INTRODUCTION

Edward M. Wolkowitz, the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estate ("Estate") of Pacific Theatres Exhibition Corp. (the "Debtor"), seeks an order authorizing the Trustee to sell the estate's interest in two California liquor licenses: (i) a type-47 On-Sale General Eating Place License #47-562169 (the "Grove Liquor License"), now issued for premises at 189 The Grove Drive, Unit 180, Los Angeles, California 90036 (the "Grove Theatre"), and (ii) a type-47 On-Sale General Eating Place License #47-610831 (the "Glendale Liquor License," and collectively with the Grove License, the "Licenses"), now issued for premises at 322 Americana Way, Glendale, California 91210 (the "Glendale Premises"; together with the Grove Premises, the "Premises"), to American Multi-Cinema, Inc., a Missouri corporation (or its nominee, the "Buyer"), or to a successful overbidder, free and clear of all liens, claims and interests.

In accord with the terms of sale, the Trustee seeks an order approving the sale free and clear of all liens, claims, and interests (collectively "Liens"), with said Liens to attach to the sales proceeds in the same manner and priority as under applicable law to the extent not paid at closing. The Debtor has not scheduled any unpaid California taxes. The Trustee is informed that

California liquor licenses are not subject to effective liens. The Buyer has requested a sale free and clear of Liens, and a sale on those terms will enhance the prospects for sale.

The proposed sales are subject to higher and better bids. The Trustee and the Buyer have entered into separate agreements for the Licenses, and the Trustee proposes to sell the licenses separately in the event there are interested bidders. The Trustee requests that the Court approve the proposed Overbid Procedures, and that, in the event bids are received, an auction proceeding be conducted at the direction of the Court immediately prior to the hearing on the sale. The Trustee submits that the price to be obtained for the Licenses are within the range of fair market value and that the sale is in the best interests of the creditors of the estate. The Trustee believes all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and therefore urges the Court to grant the Motion.

**III.**

**FACTUAL SUMMARY**

**A.    Background.**

1.    On June 18, 2021 (the "Petition Date"), the Debtor and five related debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 7 of the Bankruptcy Code.  On or shortly after the Petition Date, Edward M. Wolkowitz was duly appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "Estate").

2.    The Debtor's Schedules of Assets and Liabilities (the "Schedules"), which were filed by the Debtor on the Petition Date, reflect that the Debtor leased and operated theatres in various locations, including the Premises. As of the Petition Date, the Debtor was no longer actively operating theatres.

3.    The Schedules also reflect that the Debtor holds various liquor licenses, including the Licenses. The Licenses were valued at $60,000 each in the Schedules. A true and correct copy of the Grove Liquor License is attached as **Exhibit "1"** to the Declaration of Edward M. Wolkowitz (the "Wolkowitz Declaration") annexed hereto. A true and correct copy of the Glendale Liquor License is attached as **Exhibit "2"** to the Wolkowitz Declaration.

4.    The Debtor's non-residential real property leases for the Premises were surrendered by the Debtor and deemed terminated by agreement with the respective lessors of the Premises (the "Lessors"), as of April 19, 2021. The Lessors are related entities, not to the Debtor but to each other.

5.    As of the Petition Date, the Licenses were subject to escrow agreements between the Debtor and the Lessors.  The Trustee renegotiated the purchase price and entered into Addenda with the Buyer, with the consent of the Lessor. The Trustee is informed that the Buyer is the prospective lessee of the Premises.  The Addenda incorporate but supersede the prior escrow agreements.

6.    A true and correct copy of the Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021 for the Grove Liquor License (together, the "Grove Agreement") between the Trustee the Buyer is attached hereto and made a part hereof as **Exhibit "3"** to the Wolkowitz Declaration. A true and correct copy and of the Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021 for the Glendale Liquor License (together, the "Americana Agreement," and collectively with the Grove Agreement, the "Agreements") between the Trustee and the Buyer, is attached hereto and made a part hereof as **Exhibit "4"** to the Wolkowitz Declaration.

**B.    Proposed Sale Of Estate's Right, Title And Interest In Liquor License.**

7.    Pursuant to the Agreements, the Trustee has agreed to sell, and the Buyer has agreed to purchase, the Estate's right, title and interest in each of the Licenses (the "License Rights") for the purchase price of $85,000.00 (the "Purchase Price").

8.    Subject to Court approval, the Trustee proposes to sell the License Rights to the Buyer, free and clear of liens, claims and interests, subject to overbid, and in accordance with the terms and conditions set forth in the Agreements.

9.    The salient terms of the proposed sale of each of the License Rights to the Buyer are summarized below[1]:

---

[1] The following is a summary of the principal terms of the proposed sale of the License Rights and is not intended to be a comprehensive recitation of the terms and conditions set forth in the Agreements.  To the extent

a.    ***Good Faith Deposit:***  The Buyer shall deliver a good faith deposit in the sum of $8,500.00 to the Trustee which deposit shall be deemed non-refundable and forfeited to the Estate as liquidated damages if the Buyer is the successful bidder and the sale does not close after the Buyer's default.  The amount of any deposit paid by the Buyer (or a successful overbidder) shall be credited against the Purchase Price at the closing of escrow.

b.    ***Purchase Price:***  The Buyer shall purchase the License Rights for the Purchase Price of $85,000.00 per License (subject to overbid).  The balance of the Purchase Price (taking into account any deposit delivered by the Buyer), plus any other amounts due and payable to the Escrow Holder, shall be deposited in full into escrow by the Buyer within thirty (30) days after the application to transfer the Liquor License has been filed with the ABC.  In the event a party other than the Buyer is the winning overbidder for the License Rights, such overbidder shall deposit the balance of the overbid amount (taking into account any deposit delivered by such overbidder) into escrow within three (3) calendar days after the entry of a Court order granting this Motion.

c.    ***Payment Of Costs, Fees And Sales Or Transfer Taxes:***  In addition to the Purchase Price, the Buyer shall bear and be solely responsible for the payment of any and all costs, fees, and sales or transfer taxes arising from the sale and transfer of the Liquor License, including, without limitation, escrow fees, recording fees and transfer fees.[2]

d.    ***Sale Subject To Overbid At Auction:***  The sale of the License Rights shall be subject to overbid, in accordance with the overbid procedures described below (the "Overbid Procedures"), at an auction of the License Rights (the "Auction") to be

---

there is any conflict between the summary set forth herein and the Agreements, the Agreements shall control.

[2] The Trustee has retained JBK Enterprises Inc. ("JBK") as a liquor license consultant pursuant to order of the Court entered August 11, 2021 [Docket #47]. Under the terms of retention JBK shall receive from the Estate a consulting fee of $3,500.00 per sale for assisting in the sales if a sale is completed to the Buyer or to a successful overbidder not obtained by JBK. In the event a sale is completed to an overbidder obtained by JBK, a finder's fee is to be paid to JBK by the successful bidder, and the consulting fee shall be waived.

conducted by the Trustee at the time of the hearing on this Motion ("Sale Hearing"), or as otherwise directed by the Court.

e.    ***Closing of Escrow and Forfeiture of Deposits:***  Escrow shall close upon issuance of the transferred Liquor License to the Buyer (or a successful overbidder).

**C.    The Proposed Overbid Procedures.**

10.    While the Trustee is prepared to consummate a sale of the License Rights to the Buyer, the Trustee is also interested in obtaining the maximum price for the License Rights. Accordingly, the Trustee required that any sale of the License Rights be subject to better and higher bids, as to each License.  However, to induce the Buyer to submit a formal "stalking horse" offer to purchase the License Rights, the Trustee agreed with the Buyer to request that certain Overbid Procedures be implemented in connection with the sale of the License Rights.

11.    Based on the foregoing considerations, the Trustee seeks Court approval of the Overbid Procedures described below in connection with the proposed sale of the License Rights:

a.    ***Overbid Requirements.***  Any party interested in submitting an overbid for either of the Licenses included in the License Rights ("Overbid") must, not later than 48 hours before the Sale Hearing, *i.e.*, 11:00 a.m. September 13, 2021 (the "Overbid Deadline"), deliver such Overbid in writing to counsel for the Trustee (Philip A. Gasteier, Esq., Levene, Neale, Bender, Yoo & Brill L.L.P., 1025 Constellation Blvd., Suite 1700, Los Angeles, California 90067, Email: PAG@LNBYB.com, Facsimile: (310) 229-1244), in accordance with the requirements set forth below:

i.    A separate Overbid must be submitted for each License which the overbidder desires to purchase.

ii.    The purchase price for the License Rights in any Overbid must be in the sum of at least $90,000.00.  Any Overbid must otherwise be on the same or better terms and conditions as set forth in the Agreements.

iii.    Each party submitting an Overbid must, by the Overbid Deadline: (i) deliver a deposit in the sum of $9,000.00, in the form of a cashier's check, to the Trustee, so that such deposit is actually received by the Overbid Deadline, and

9

(ii) deliver to counsel for the Trustee proof of committed funds available to the bidder sufficient to enable such bidder to consummate the sale of the License Rights, which proof shall be in the form of a letter of credit, loan commitment or other form acceptable to the Trustee in the Trustee's sole discretion.   In the event that (i) the bidder fails to timely make the deposit, (ii) the bidder fails to timely provide proof of committed funds, or (iii) the Trustee determines, in his sole  discretion, that the proof  of  funds provided  to  Trustee  by  a  bidder  is unacceptable, the Trustee may, at his sole discretion, disqualify such bidder from participating in the Auction.  In the event that the Trustee exercises his discretion and disqualifies a bidder from participating in the Auction, the Deposit made by such bidder (if any) shall be returned to the bidder.

b.      ***<u>Bidding At Auction.</u>***  If at least one qualified bidder who has submitted an Overbid appears at the Auction, the Trustee shall designate what he determines, in his reasonable judgment, to be the best and highest Overbid received for the License Rights to be the leading bid at the Auction.  Thereafter, the Trustee shall solicit better and higher bids for the License Rights, in bidding increments of at least $1,000, from the qualified bidders participating in the Auction (including the Buyer, if it chooses to participate) until the best and highest bid for the License Rights has been determined by the Trustee.  The qualified bidder who submits the second best/highest bid for the License Rights at the Auction shall be designated as the backup bidder.

c.      ***<u>Backup Bidder:</u>***  In the event that the Buyer or the successful overbidder cannot timely complete the purchase of the License Rights, the Trustee shall be authorized to proceed with the sale of the License Rights to the backup bidder (if one is designated at the Auction) without further notice, hearing or order of the Court.

**D.      <u>Liens Against Liquor License And Potential Tax Consequences From Sale.</u>**

12.      The Trustee is not aware of any valid liens, claims or interests against the Liquor License.

13.     Since the Buyer (or a successful overbidder) will bear sole responsibility for the payment of any sales or transfer taxes arising from the proposed sale and transfer of the License Rights, the Trustee does not believe there will be any negative tax consequences for the Estate arising from the proposed sale of the License Rights.

**E.    Distribution To The Estate.**

14.     Since the Buyer (or a successful overbidder) will bear sole responsibility for the payment of all costs, fees, and sales or transfer taxes arising from the sale and transfer of the Liquor License, including, without limitation, escrow fees, recording fees, transfer fees, and the "finder's fee", if any, the Trustee believes that the proposed sale of the License Rights will generate net proceeds in the full amount of the Purchase Price (*i.e.*, at least $85,000.00), per License, less any consulting fees paid to JBK.

**II.**

**GOOD CAUSE EXISTS TO APPROVE THE PROPOSED**

**OVERBID PROCEDURES**

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") govern the scope of the notice to be provided in the event a trustee elects to sell property of the estate under 11 U.S.C. § 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale.  Fed. R. Bankr. Proc. 6004(f).

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a trustee in conducting a public or private sale. Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."  *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).  Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding

1    yields higher offers and thus benefits the estate.  Therefore, the objective is 'to maximize

2    bidding, not restrict it.'" *Id.*

3         The Trustee believes that the proposed Overbid Procedures will maximize the price

4    ultimately obtained for the License Rights while still protecting the Estate from parties who may

5    wish to bid on the License Rights but who are ultimately unable to consummate a purchase of

6    the License Rights.  The Overbid Procedures serve numerous legitimate purposes.  Among other

7    things, the Overbid Procedures will (i) foster competitive bidding among any serious potential

8    purchasers; (ii) eliminate from consideration purchasers who would waste the Estate's time

9    because they would not have the financial ability to consummate a purchase of the License

10   Rights; and (iii) ensure that the highest possible price is obtained for the License Rights.

11   Accordingly, the Trustee submits that approval of the proposed Overbid Procedures is in the best

12   interests of the Estate and creditors.

13        Local Bankruptcy Rule 6004-1 provides that a hearing on a motion to establish

14   procedures for the sale of assets may be scheduled on not less than seven (7) days' notice.  The

15   notice must describe the proposed procedures, describe the purchase agreement, describe the

16   prior marketing effort and provide that opposition may be filed on or before one (1) day prior to

17   the hearing.  LBR 6004-1(b)(2).  Copies of the Notice of Motion and Motion, which comply with

18   LBR 6004-1(b)(2), are being served on all parties to be served under the order limiting notice,

19   entered August 11, 2021 [Docket #46] the Debtors and their counsel, the creditors holding the 20

20   largest unsecured claims in the Debtors' cases, any party against whom direct relief is sought by

21   this Motion, all parties requesting special notice, and the Office of the United States Trustee via

22   first-class mail.  Notwithstanding the provisions of Local Bankruptcy Rule 6004-1, which allow

23   a hearing on a bidding procedures motion to be scheduled on notice of only seven (7) days, the

24   Trustee is filing and serving the Notice of the Motion with at least twenty-one (21) days' notice

25   before the Sale Hearing.

26   ///

27   ///

28   ///

# III.

## THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE

**A.    The Trustee Has Complied With All Applicable Notice Requirements.**

Section 363(b)(1) provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances.  11 U.S.C. § 102(1)(A).

Bankruptcy Rule 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Bankruptcy Rules 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section 363(b)(2) of the Bankruptcy Code. Fed. R. Bankr. P. 6004(a).  Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice.  Fed. R. Bankr. P. 2002(a)(2).  Bankruptcy Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections.  It also provides that the notice of sale or property is sufficient if it generally describes the property.  Fed. R. Bankr. P. 2002(c)(1).  Bankruptcy Rule 2002(k) requires that the notice be given to the United States Trustee.  Fed. R. Bankr. P. 2002(k).

In addition, Local Bankruptcy Rule 6004-1 requires that the Notice contain the information specified in Local Bankruptcy Rule 6004-1(c)(3) and that an additional copy of the Notice be submitted to the Clerk of the Bankruptcy Court together with a Form 6004-2 at the time of filing for purposes of publication.  L.B.R. 6004-1(c)(3) and (f).

The Trustee has complied with all of the above provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.  The Trustee has complied with Bankruptcy Rules 6004(a) and 2002(a)(2), (c)(1), (i) and (k), as well as Local Bankruptcy Rule 6004-1(c)(3), because the notice of the Motion that has been filed contemporaneously herewith (the

"<u>Notice</u>") includes all of the required information, including, without limitation, the date, time and place of the Auction and Sale Hearing and the deadline for objecting to this Motion, and has been served on the Debtors and their counsel, the creditors holding the 20 largest unsecured claims in the Debtors' cases, any party against whom direct relief is sought by this Motion, all parties requesting special notice, and the Office of the United States Trustee. The Trustee has also complied with the requirements of Local Bankruptcy Rule 6004-1(f) because the Trustee has filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court for purposes of publication.

**B.**     **<u>The Sale Of The License Rights Should Be Approved Because Good Business Reasons Exist, The Purchase Price For The License Rights Is Fair And Reasonable, And The Proposed Sale Is In The Best Interests Of The Estate And Creditors.</u>**

As a general matter, a Court considering a motion to approve a sale under Bankruptcy Code Section 363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). In addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

(1)     the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;

(2)     the property has been given adequate marketing;

(3)     the sale is in good faith, *i.e.*, there is an absence of any lucrative deals with insiders, and

(4)     adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999). The Trustee submits that the proposed sale of the License Rights, in accordance with the Agreements, satisfies each of these requirements.

1.     <u>Sound Business Purpose.</u>

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*,

83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b).  The facts pertaining to the sale at issue here amply substantiate the Trustee's business decision that the contemplated sale of the License Rights, in accordance with the Agreements, serves the best interests of the Estate and merits the approval of this Court.

The proposed sale of the License Rights to the Buyer is anticipated to result in net sale proceeds of at least $163,000.00, which will be available for distribution to creditors of the Estate.  On the other hand, if the Trustee is not able to consummate a sale of the License Rights to the Buyer (or a successful overbidder) as proposed herein, the Trustee risks being unable to successfully sell the License Rights or risks selling the License Rights for a substantially lower purchase price.

Since the Buyer has the ability to obtain a liquor license from other sources, if necessary, the timing of the proposed sale of the License Rights is critical.  If the Trustee is not able to proceed with the sale of the License Rights to the Buyer in a timely fashion, the Buyer will undoubtedly look to other sources to obtain the liquor license it requires, in which event, the Trustee will lose his "stalking horse" buyer for the License Rights and potentially risk having no willing buyer for the License Rights. The Buyer wishes to proceed with the process of transferring the License Rights as soon as possible. Accordingly, waiver of the provisions of Bankruptcy Rule 6004 (h) is appropriate.

Based on the foregoing, the Trustee submits that the proposed sale of the License Rights is overwhelmingly in the best interests of the Estate and therefore represents a sound exercise of the Trustee's business judgment.

2.    <u>Fair and Reasonable Price.</u>

In order for a sale to be approved under Bankruptcy Code Section 363(b), the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The trustee is given substantial discretion in this regard.  *Id.*  In addition, Courts have broad discretion with respect to matters under section 363(b).  *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate

assets, the ultimate purpose is to obtain the highest price for the property sold. *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

Based upon the discussions that the Trustee and his counsel have had with the JBK, who specializes in the marketing and sale of liquor licenses and has extensive experience in and knowledge of the current market for liquor licenses, the proposed Purchase Price of $85,000.00 per License is within the range of the current fair market value of the License Rights in an open market.  In addition, the proposed Overbid Procedures and Auction process are specifically designed to ensure that the highest price possible is obtained for the License Rights.  Although the Trustee will not know the results of the Auction (if one is conducted) until the Auction has been completed, the Trustee submits that, based upon the marketing efforts of JBK following the Petition Date, the License Rights will have been exposed to those parties who are most likely to be interested in acquiring the License Rights, and the highest and best bid obtained for the License Rights (whether it is the bid offered by the Buyer or an overbid submitted by a successful overbidder) will constitute fair and reasonable value for the License Rights.

///

///

///

///

///

3. <u>Adequate Marketing.</u>

It is the Trustee's understanding and belief that JBK has continued to market the License Rights for sale to those parties who are most likely to be interested in acquiring such rights. Furthermore, in an effort to maximize the value obtained for the License Rights, the Trustee is inviting overbids for the License Rights, in accordance with the proposed Overbid Procedures. Based on the foregoing, the Trustee submits that the License Rights have been, and will be, adequately marketed.

4. <u>Good Faith.</u>

When a Bankruptcy Court authorizes a sale of assets pursuant to Bankruptcy Code Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies*, 788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent creditor protections. *Id.* at 150. With respect to the Trustee's conduct in conjunction with the sale of the Property, the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Abbotts Dairies*, 788 F.2d at 147; *Wilde Horse Enterprises*, 136 B.R. at 842.

The Trustee and the Buyer have negotiated the terms of the proposed sale of the License Rights, in accordance with the Agreements, at arms' length and in good faith. The Agreements are substantially similar to those utilized in connection with sales of liquor licenses, and the proposed Purchase Price for the License Rights reflects the current fair market value of the License Rights. The Buyer has no affiliation with the Debtor or the Trustee, and is therefore not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31). The Trustee submits that there has been no fraud or collusion in connection with the proposed sale of the License Rights. No offer to purchase the License Rights received by the Trustee has been ignored, and the Trustee has taken reasonable steps to try to obtain the highest price possible for the License Rights. Based on the foregoing, the Trustee submits that the good faith requirement has been satisfied, and that the Buyer (or a successful overbidder) should be deemed a "good faith" purchaser under 11 U.S.C. § 363(m).

5.      <u>Accurate and Reasonable Notice.</u>

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *Id.*

As set forth in detail in Section III.A of this Motion, the Trustee has complied with all of the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. Thus, the Trustee submits that the notice of the Motion (and proposed sale of the License Rights) should be deemed adequate, accurate and reasonable by the Court.

**C.      The Court Should Approve The Sale Of The License Rights, Free And Clear Of Liens, Claims And Interests.**

The Bankruptcy Court has the power to authorize the sale of property free and clear of liens or interests. *See* 11 U.S.C. § 363(f); *In re Gerwer*, 898 F.2d 730, 733 (9th Cir. 1990).

Section 363(f) of the Bankruptcy Code permits a sale of property "free and clear of any interest in such property of an entity other than the estate" if <u>any one</u> of the following five conditions is met:

(1)      applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)      such entity consents;

(3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)      such interest is in bona fide dispute; or

(5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is written in the disjunctive; thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of liens. *See e.g., Citicorp Homeowners Services, Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988);

18

1    *Mutual Life Ins. Co. of New York v. Red Oak Farms, Inc. (In re Red Oak Farms, Inc.)*, 36 B.R.

2    856, 858 (Bankr. W.D. Mo. 1984).

3        The Trustee is not aware of any valid liens, claims or interests against the Liquor License.

4    Accordingly, the sale of the License Rights to the Buyer (or a successful overbidder), free and

5    clear of all liens, claims and interests, is appropriate and warranted.

6        The Trustee submits that, in the event that any party asserts that it holds a lien against the

7    Liquor License, such lien is subject to bona fide dispute.   Section 24076 of the California

8    Business and Professions Code [Division 9–Alcoholic Beverages, Article 5–Transfer of

9    Licenses] provides, in relevant part, that "[n]o licensee shall enter into any agreement wherein he

10   pledges the transfer of his license as security for a loan or as security for the fulfillment of any

11   agreement."   Based on the foregoing, the Trustee contends that the Debtor did not have the

12   ability or authority to pledge the Liquor License as security for a loan or other obligation and,

13   therefore, there are no legitimate liens against the Liquor License.

14       Notwithstanding the foregoing, to the extent that any parties are determined to hold

15   legitimate liens against the Liquor License, such liens shall attach to the proceeds of the sale of

16   the License Rights to the same extent, validity and priority as such parties' liens against the

17   Liquor License.   Based on the foregoing, the sale of the License Rights to the Buyer (or a

18   successful overbidder) may be approved, free and clear of liens, claims and interests, pursuant to

19   11 U.S.C. § 363(f)(1) and (4).

**IV.**

**<u>CONCLUSION</u>**

22       **WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

23       1.      finding that the notice given by the Trustee in connection with the sale of the

24   License Rights and the hearing on the Motion is adequate, sufficient, proper and complies with

25   all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

26       2.      granting the Motion in its entirety;

27       3.      approving the Overbid Procedures;

28

4.      authorizing the Trustee to sell the License Rights to the Buyer (or to a successful overbidder or overbidders), free and clear of all liens, claims and interests, pursuant to the terms and conditions set forth in the Agreements;

5.      finding that the Buyer (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

6.      waiving the provisions of Bankruptcy Rule 6004 (h);

7.      authorizing the Trustee to execute and deliver any and all documents and take such actions as may be reasonably necessary to consummate the sale of the License Rights;

8.      authorizing the Trustee to pay consultation or finders' fees, if any; and

9.      granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: August 19, 2021                    EDWARD M. WOLKOWITZ,
                                          CHAPTER 7 TRUSTEE

                                          By:_____/s/ Philip A. Gasteier_____
                                              PHILIP A. GASTEIER
                                              JEFFREY KWONG
                                              LEVENE, NEALE, BENDER, YOO
                                                  & BRILL L.L.P.
                                              Attorneys for Edward M. Wolkowitz,
                                              Chapter 7 Trustee

## <u>DECLARATION OF EDWARD M. WOLKOWITZ</u>

I, Edward M. Wolkowitz, hereby declare as follows:

1.     I am the duly appointed Chapter 7 Trustee of the bankruptcy estate (the "<u>Estate</u>") of Pacific Theatres Exhibition Corp., the Chapter 7 debtor herein (the "<u>Debtor</u>").    I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.    I submit this declaration in support of that certain *Chapter 7 Trustee's Motion For Entry Of An Order: (A) Approving Sale Of Estate's Right, Title And Interest In Liquor Licenses (Glendale and Grove), Free And Clear Of Liens, Claims And Interests; And (B) Approving Overbid Procedures* (the "<u>Motion</u>"), to which this declaration is attached.    All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

2.     On June 18, 2021 (the "<u>Petition Date</u>"), the Debtor and five related debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 7 of the Bankruptcy Code.    On or shortly after the Petition Date, I was duly appointed as the Chapter 7 Trustee of the Debtor's bankruptcy estate (the "<u>Estate</u>").

3.     The Debtor's Schedules of Assets and Liabilities (the "<u>Schedules</u>"), which were filed by the Debtor on the Petition Date, reflect that the Debtor leased and operated theatres in various locations, including the Premises. As of the Petition Date, the Debtor was no longer actively operating theatres.

4.     The Schedules also reflect that the Debtor holds various liquor licenses, including the Licenses. The Licenses were valued at $60,000 each in the Schedules. A true and correct copy of the Grove Liquor License is attached hereto as **Exhibit "1."** A true and correct copy of the Glendale Liquor License is attached hereto as **Exhibit "2."**

5.     The Debtor's non-residential real property leases for the Premises were surrendered by the Debtor and deemed terminated by agreement with the respective lessors of the Premises (the "<u>Lessors</u>"), as of April 19, 2021. The Lessors are related entities, not to the Debtor but to each other.

6.      As of the Petition Date, the Licenses were subject to escrow agreements between the Debtor and the Lessors.   The Trustee renegotiated the purchase price and entered into Addenda with the Buyer, with the consent of the Lessor. The Trustee is informed that the Buyer is the prospective lessee of the Premises.   The Addenda incorporate but supersede the prior escrow agreements.

7.      A true and correct copy of the Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021 for the Grove Liquor License (together, the "Grove Agreement") is attached as **Exhibit "3"** hereto. A true and correct copy and of the Addendum to Escrow Instructions, and Escrow Instructions dated April 23, 2021 for the Glendale Liquor License (together, the "Americana Agreement," and collectively with the Grove Agreement, the "Agreements") is attached as **Exhibit "4"** hereto.

8.      Subject to Court approval, I propose to sell the License Rights to the Buyer, free and clear of liens, claims and interests, subject to overbid, and in accordance with the terms and conditions set forth in the Agreements.

9.      I have reviewed the summary of the terms of the proposed sale of the License Rights to the Buyer that is set forth in the Motion and confirm that it accurately reflects the sale terms agreed to by the Buyer and me.

10.      While I am prepared to consummate a sale of the License Rights to the Buyer, I am also interested in obtaining the maximum price for the License Rights.   Accordingly, I required that any sale of the License Rights be subject to better and higher bids.  However, to induce the Buyer to submit a formal "stalking horse" offer to purchase the License Rights, the Buyer is requiring that certain Overbid Procedures be implemented in connection with the sale of the License Rights.

11.      Based on the foregoing considerations, pursuant to the Motion, I am seeking Court approval of the overbid procedures described in the Motion (the "Overbid Procedures") in connection with the proposed sale of the License Rights.  For the reasons set forth in the Motion, I believe that the proposed Overbid Procedures will maximize the price ultimately obtained for

the License Rights while still protecting the Estate from parties who may wish to bid on the License Rights but who are ultimately unable to consummate a purchase of the License Rights.

12.    I am not aware of any valid liens, claims or interests asserted against the Liquor License.

13.    Since the Buyer (or a successful overbidder) will bear sole responsibility for the payment of any sales or transfer taxes arising from the proposed sale and transfer of the License Rights, I do not believe there will be any negative tax consequences for the Estate arising from the proposed sale of the License Rights.

14.    Since the Buyer (or a successful overbidder) will bear sole responsibility for the payment of all costs, fees, and sales or transfer taxes arising from the sale and transfer of the Liquor License, including, without limitation, escrow fees, recording fees, transfer fees, and the "finder's fee", if any, I believe that the proposed sale of the License Rights will generate net proceeds in the full amount of the Purchase Price, less any consulting fee payable to JBK Enterprises Inc. (*i.e.*, at least $163,000.00 combined).[3]

15.    As noted above, I anticipate that the proposed sale of the License Rights to the Buyer will result in net sale proceeds of at least $163,000.00, which will be available for distribution to creditors of the Estate. If, however, I am not able to consummate a sale of the License Rights to the Buyer (or a successful overbidder) as proposed in the Motion, I risk being unable to successfully sell the License Rights or risk selling the License Rights for a substantially lower purchase price. The Buyer has advised that it desires to acquire the License Rights and initiate the transfer process as soon as possible.

16.    In addition, it is my understanding and belief that the Buyer has the ability to obtain a liquor license from other sources, if necessary. Therefore, I believe that the timing of the proposed sale of the License Rights is critical. If I am not able to proceed with the sale of the

---

[3] I have retained JBK Enterprises Inc. ("JBK") as a liquor license consultant pursuant to order of the Court entered August 11, 2021 [Docket #47]. Under the terms of retention JBK shall receive from the Estate a consulting fee of $3,500.00 per sale for assisting in the sales if a sale is completed to the Buyer or to a successful overbidder not obtained by JBK. In the event a sale is completed to an overbidder obtained by JBK, a finder's fee is to be paid to JBK by the successful bidder, and the consulting fee shall be waived.

License Rights to the Buyer in a timely fashion, the Buyer will likely look to other sources to obtain the liquor license it requires, in which event, I will lose the "stalking horse" buyer for the License Rights and potentially risk having no willing buyer for the License Rights.

17.    Based upon the discussions that my counsel and I have had with JBK, who I am advised specializes in the marketing and sale of liquor licenses and has extensive experience in and knowledge of the current market for liquor licenses, the proposed Purchase Price of $85,000.00 per license is within the range of the current fair market value of the License Rights in an open market.  In addition, I believe that the proposed Overbid Procedures and Auction process will ensure that the highest price possible is obtained for the License Rights.  Although I will not know the results of the Auction (if one is conducted) until the Auction has been completed, I believe that, since JBK has continued to market the License Rights following the Petition Date, the License Rights will have been exposed to those parties who are most likely to be interested in acquiring the License Rights, and the highest and best bid obtained for the License Rights (whether it is the bid offered by the Buyer or an overbid submitted by a successful overbidder) will constitute fair and reasonable value for the License Rights.

18.    The Buyer and I have negotiated the terms of the proposed sale of the License Rights, in accordance with the Agreements, at arms' length and in good faith.  Based upon my experience, the Agreements are substantially similar to those utilized in connection with sales of liquor licenses.  To the best of my knowledge, the Buyer has no affiliation with the Debtor or me, and is therefore not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

19.    There has been no fraud or collusion in connection with the proposed sale of the License Rights. No offer to purchase the License Rights received by my counsel or me has been ignored, and I have taken reasonable steps to try to obtain the highest price possible for the License Rights.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of August, 2021, at Los Angeles County, California.


Edward M. Wolkowitz

# EXHIBIT "1"

# License Details

**Report Date:** Monday, July 19, 2021

## LICENSE INFORMATION

| | |
|---|---|
| License Number: | `562169 |
| Primary Owner: | PACIFIC THEATRES EXHIBITION CORP |
| Office of Application: | 04 - LA/METRO |

## BUSINESS NAME

PACIFIC THEATRES

## BUSINESS ADDRESS

189 THE GROVE DR UNIT L-80, LOS ANGELES, CA, 90036

| | |
|---|---|
| County: | LOS ANGELES |
| Census Tract: | 2145.01 |

## LICENSEE INFORMATION

**Licensee:**    PACIFIC THEATRES EXHIBITION CORP

**Company Information**

OFFICER: FORMAN, CHRISTOPHER SAMUEL (PRESIDENT)

OFFICER: FORMAN, CHRISTOPHER SAMUEL (CHIEF EXECUTIVE OFFICER)

OFFICER: DASHWOOD, NORA ELIZABETH (CHIEF OPERATING OFFICER)

OFFICER: BUGIELSKI, MICHAEL (SECRETARY/ASST SEC)

OFFICER: SAPERSTEIN, JILL ELLEN (SECRETARY/ASST SEC)

OFFICER: ELMS, KEVIN (TREASURER)

OFFICER: GREEN, STEPHEN CHARLES (VICE PRESIDENT)

OFFICER: MCCOURT, GRETCHEN (VICE PRESIDENT)

STOCKHOLDER: PACIFIC CINEMAS CORPORATION

## LICENSE TYPES

### 47 - ON-SALE GENERAL EATING PLACE

| | |
|---|---|
| License Type Status: | ACTIVE |
| Status Date: | 11-JUL-2017 |
| Term: | 12 Month(s) |
| Original Issue Date: | 10-JUL-2017 |
| Expiration Date: | 30-JUN-2022 |
| Master: | Y |
| Duplicate: | 0 |
| Fee Code: | P40 |
| Transfers: | |
| Conditions: | PRIORITIES 1995 AND LATER, NO SALE 2 YEARS |

## OPERATING RESTRICTIONS:

*Operating Restrictions exist. For more information, please see our Guidelines for Access to Records.

## DISCIPLINARY ACTION:

No Active Disciplinary Action found

## DISCIPLINARY HISTORY:

No Disciplinary History found.

## HOLDS:

No Active Holds found

## ESCROWS:

No Escrow found

For definition of codes, view our glossary

# EXHIBIT "2"

**License Details**

**Report Date:** Monday, July 19, 2021

**LICENSE INFORMATION**

| | |
|---|---|
| License Number: | 610831 |
| Primary Owner: | PACIFIC THEATRES EXHIBITION CORP |
| Office of Application: | 05 - VAN NUYS |

**BUSINESS NAME**

PACIFIC THEATRES GLENDALE

**BUSINESS ADDRESS**

322 AMERICANA WAY , GLENDALE, CA, 91210

| | |
|---|---|
| County: | LOS ANGELES |
| Census Tract: | 3023.01 |

**LICENSEE INFORMATION**

| | |
|---|---|
| Licensee: | PACIFIC THEATRES EXHIBITION CORP |

**Company Information**

OFFICER: FORMAN, CHRISTOPHER SAMUEL (PRESIDENT)

OFFICER: FORMAN, CHRISTOPHER SAMUEL (CHIEF EXECUTIVE OFFICER)

OFFICER: DASHWOOD, NORA ELIZABETH (CHIEF OPERATING OFFICER)

OFFICER: BUGIELSKI, MICHAEL (SECRETARY/ASST SEC)

OFFICER: SAPERSTEIN, JILL ELLEN (SECRETARY/ASST SEC)

OFFICER: ELMS, KEVIN (TREASURER)

OFFICER: GREEN, STEPHEN CHARLES (VICE PRESIDENT)

OFFICER: MCCOURT, GRETCHEN (VICE PRESIDENT)

STOCKHOLDER: PACIFIC CINEMAS CORPORATION

**LICENSE TYPES**

**47 - ON-SALE GENERAL EATING PLACE**

| | |
|---|---|
| License Type Status: | ACTIVE |
| Status Date: | 13-DEC-2019 |
| Term: | 12 Month(s) |
| Original Issue Date: | 12-DEC-2019 |
| Expiration Date: | 31-MAY-2022 |
| Master: | Y |
| Duplicate: | 0 |
| Fee Code: | P40 |
| Transfers: | From License Number: 47-488691 |
| | Transferred On: 12-DEC-2019 |

**OPERATING RESTRICTIONS:**

At all times when the premises is exercising the privileges of their license, the sale of food, in compliance with Section 23038 of the Business and Professions Code, shall be offered and available for purchase.

All sales and service of alcoholic beverages for consumption in the general spectator seating areas shall be made only from concession stands, portable stands or bars, or fixed bars, and shall not be sold, served or delivered to customers by individual ambulatory vendors, commonly known as "hawkers".

Points of sale of alcoholic beverages shall not be maintained within the theater auditoriums.

Notwithstanding any other condition(s) on this petition, alcoholic beverages may be sold or served by waiters or waitresses in the general spectator seating areas under the following conditions: a. Only persons occupying seats in the designated theaters shall be permitted to order and be served alcoholic beverages. b. Orders from patrons seated in these theaters must be made to the waiter or waitress serving that area, and the alcoholic beverages must be personally delivered to the patron by the waiter or waitress who took the order. c. The waiter or waitress serving in the theaters shall not carry a supply of unordered alcoholic beverages.

No more than two (2) alcoholic beverages shall be sold or served to any one (1) person during any transaction.

Alcoholic beverages shall be served in containers which significantly differ in appearance from those containers utilized for non-alcoholic beverages. Containers for beer shall not exceed 25 ounces. This condition does not preclude the service of alcoholic beverages in their original containers.

At all times when the premises is exercising the privileges of their license, an employee of the premises shall enter and monitor the activity within the theaters on a regular basis, but no less than once every 30 minutes.

**DISCIPLINARY ACTION:**

No Active Disciplinary Action found

**DISCIPLINARY HISTORY:**

No Disciplinary History found.

| **HOLDS:** | **ESCROWS:** |
|---|---|
| No Active Holds found | No Escrow found |

# EXHIBIT "3"

## ADDENDUM TO ESCROW INSTRUCTIONS DATED APRIL 23, 2021

This Addendum to Escrow Instructions ("this Addendum") is entered into between Edward M. Wolkowitz, solely in his capacity as Chapter 7 Trustee (herein "Seller") for the bankruptcy Estate of Pacific Theatres Exhibition Corp. (herein "Debtor"), Case No. 2:21-bk-15007-BB, United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and American Multi-Cinema, Inc., a Missouri corporation (herein, or its designee, "Buyer"), with respect to the Escrow Instructions Alcoholic Beverage License Transfer Only between the Debtor and Grove Cinemas, LLC, a Delaware limited liability company (herein "Grove Cinemas"), dated April 23, 2021 (herein "Escrow Instructions") for the sale and purchase of the On-Sale General Eating Place License #47-562169 (herein the "License").

1.    The Escrow Instructions and this Addendum, taken together, shall constitute the entire Agreement of the Parties. Buyer shall be substituted in place and stead of Grove Cinemas in the Escrow Instructions, with the consent of Grove Cinemas.

2.    The Agreement is contingent on (a) entry of an order, of the Bankruptcy Court approving the Agreement and authorizing Seller to close the sale in accord with its terms. If the Bankruptcy Court declines to approve the Agreement, the Agreement shall be null and void.

3.    The sale of the License to Buyer shall be free and clear of all liens, claims, mortgages, security interests, charges, and encumbrances ("Liens"), if any, with all such valid Liens to attach to the sale proceeds with the same validity, priority and effect as formerly to the License. Sections 7 and 8 of the Escrow Instructions are superseded by this Section 3, and are accordingly deleted.

4.    The Total Purchase Price for the License shall be Eighty-Five Thousand Dollars ($85,000.00), $8,500.00 of which shall be paid to Seller as a deposit upon the execution of this Addendum. Buyer acknowledges that the renewal license fee due June 30, 2021 has been paid.

5.    Payments to Seller shall be made by certified check payable to "Edward M. Wolkowitz, Chapter 7 Trustee for Pacific Theatres Exhibition Corp.", at 800 S. Figueroa Street, #1260, Los Angeles, California 90017.

6.    Buyer acknowledges that the approval by the Bankruptcy Court of the sale contemplated in the Agreement shall be subject to overbidding in accordance with bankruptcy law and other applicable statutes, regulations and rules of the Bankruptcy Court. Buyer acknowledges that overbidders may be present at the hearing regarding the motion to approve the sale of the License and that the Seller has a duty to (a) attempt to obtain overbids and (b) to sell the License to the bidder who submits the best bid. Seller shall proceed with all due haste in requesting and securing a hearing date before the Bankruptcy Court for the approval of the sale of the License contemplated in this Agreement. The hearing before the Bankruptcy Court shall be on or before September 15, 2021, unless otherwise agreed upon between Buyer and Seller or otherwise set by the Bankruptcy Court.

1

7.      Buyer shall have the right to be present at the hearing regarding the motion to approve the sale to the Buyer and to participate in any bidding that may occur.  Seller shall inform Buyer of the date, time, and location of the hearing regarding the motion to approve the sale to the Buyer.  Buyer acknowledges and agrees, however, that the Bankruptcy Court will require the Seller to sell the License to the qualified bidder who submits the best bid.

8.      If the Buyer is the successful purchaser and the Buyer has not breached the Agreement, the deposit of the Buyer shall be fully credited toward the final purchase price. If an overbidder is the successful purchaser, the Seller shall return to the Buyer all funds tendered by the Buyer in connection with the sale contemplated by the Agreement including, but not limited to, the deposit; provided, that the Buyer has not breached any provision of the Agreement. If the Buyer is the successful purchaser and the Buyer has breached the Agreement and fails to close the sale, the deposit of the Buyer may be retained by the Seller as liquidated damages.

9.      If any liens, claims of co-owners, tax consequences, claims of parties to executory contracts or other encumbrances against or interests in the License, whether or not previously known to the Seller, make the sale of the License infeasible, unprofitable or insufficiently profitable for the Estate, then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transactions contemplated by the Agreement. Likewise, if any party makes an offer involving or related in any fashion to the License which would provide a greater benefit to the Estate or its creditors (or enable the Seller to avoid or resolve existing or future litigation), then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transactions contemplated by the Agreement.  In such event, the Buyer's sole recourse against the Estate shall be to recover all funds tendered by the Buyer to the Seller in connection with the sale contemplated by the Agreement including, but not limited to, the deposit.

10.     Buyer hereby represents, acknowledges and agrees for the Buyer and the Buyer's successors, heirs and assigns, that:

    a.  The interests of the Estate, if any, in the License are being sold in "AS IS, WHERE IS, WITH ALL FAULTS" present condition, without representations or warranties of any kind or nature whatsoever whether express or implied.

    b.  The Seller is a bankruptcy trustee and any interest acquired by the Estate in the License was acquired for a short period of time due to the bankruptcy case.  Neither the Estate nor the Seller has acquired any interest in the License for the purpose of maintaining the License, but rather for the sole purpose of liquidating the License for the benefit of the creditors of the Estate.

    c.  Due to the unique nature of bankruptcy cases, the Seller has not personally audited, investigated or inspected the License and has not personally used the License.  The Buyer and the Seller further agree that it is not economical or reasonable for the Seller to audit, investigate or inspect the License under these circumstances because neither the Estate nor the Seller acquired an interest in the License, if any, for the purpose of using the License. Buyer wishes to acquire the License for the Buyer's

2

particular use.  Buyer has greater assets and facilities than the Estate to make a diligent audit, investigation and inspection of the License.

d.  Buyer has been given an extensive opportunity to inspect and investigate the License, independently and through agents of the Buyer's choosing. The Buyer shall continue to have the right to inspect the License.  Buyer acknowledges that in purchasing the License, the Buyer is not relying in any manner on the Seller, the Seller's attorney or any other agents of the Seller or the Estate regarding the characteristics or condition of the License or any other aspect of the License. Buyer acknowledges that the Buyer is not relying in any manner upon any information regarding the License provided in any manner by the Seller, the Seller's attorney or any other agent of the Seller.  Buyer acknowledges that the Buyer is not relying on the Seller, the Seller's attorney or any other agents of the Seller or the Estate regarding whether the License is in compliance with any statutes, codes, regulations, ordinances or other laws of any city, county, state, federal government or any other governmental agency.  Buyer assumes all responsibility to check with the appropriate governmental agencies for the intended use of the License and Buyer holds harmless the Seller, the Seller's attorney, the Estate, the United States Bankruptcy Court and the Seller's agents as to suitability of the License for the Buyer's intended use.

e.  Although there could be defects in and on the License, including, but not limited to, title defects, Buyer relieves the Seller, the Seller's attorneys and the Seller's agents of any and all obligations to inspect the License or investigate any matter involving the License, including, but not limited to, the history of the License, its condition, any License defects, its potential value to the Buyer or the public and any aspects of title to the License.

f.  Buyer represents and warrants that the Buyer is relying solely upon inspection(s) of the License by the Buyer and not upon any representation made by any person whomsoever, and that Buyer is purchasing the License in the condition in which it now is, without any obligation on the part of the Seller to make any changes to the License or to maintain the License. In summary, the sale is completely "AS IS, WHERE IS, WITH ALL FAULTS."  The consummation of this transaction shall constitute an acknowledgement by Buyer that the License has been accepted without representation or warranty of any kind or nature and in its present "AS IS, WHERE IS, WITH ALL FAULTS" condition.

11.    Buyer acknowledges and agrees that the Seller is acting in all respects in connection with the Agreement solely as a bankruptcy trustee, the representative of the Estate, and not in the Seller's personal or individual capacity.  Buyer acknowledges and agrees that the Seller does not have and shall not have any personal liability of any kind under any provision of the Agreement. With respect to any and all disputes arising from or in any manner connected with the Agreement, Buyer hereby waives any and all rights to (a) sue the Seller in his personal capacity, (b) to recover a judgment against the Seller personally or (c) to obtain any other form of relief against the Seller in his personal capacity. In the event of any breach of the Agreement

3

by the Seller or the occurrence of any other dispute arising from or in any manner related to such breach or dispute shall be asserted against the Estate only and not the Seller.

12.    The Seller and the Buyer hereby consent to the sole jurisdiction of the Bankruptcy Court, to resolve any dispute, claim or controversy between the parties arising out of or relating to the License, the Agreement, or any matter that is the subject of the Agreement. All parties agree that such a dispute would constitute a core proceeding and all parties waive their right, if any, to a jury in such a proceeding. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute, claim or controversy between the parties arising out of or relating to the License, the Agreement or any matter that is the subject of the Agreement.

13.    The Agreement shall be governed by and construed in accordance with the federal laws of the United States of America including, but not limited to, the Bankruptcy Code. To the extent that any state law applies (and which is not superseded by federal law), the Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law or conflict of law provision or rule of the State of California or any other non-federal jurisdiction other than the State of California. The Agreement has been entered into in the State of California.

14.    The foregoing terms and conditions supersede and replace any inconsistent provisions in the referenced Escrow Instructions. All other terms and conditions of said Escrow Instructions shall remain in full force and effect and are incorporated by reference herein.

15.    This Addendum may be executed in counterparts and each executed counterpart shall be deemed an original and all of which may be taken together and shall constitute one instrument. Executed signature pages to this Agreement may be delivered by facsimile, or by email in portable document format (.pdf) and delivery of the signature page by such method will have the same effect as if the original signature had been delivered by the sending party to the receiving party.

16.    If this Addendum is not accepted in writing by Buyer and an executed copy personally delivered to the Seller on or before August 6, 2021, this Addendum shall be null and void, and neither Seller nor Buyer shall have any further rights or obligations hereunder.

[SIGNATURES ON FOLLOWING PAGE]

4

SELLER:

EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE:    AUG 0 5 2021

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to
purchase the License on the terms and conditions in the aforementioned Escrow Instructions as
modified by the provisions of this Addendum.

BUYER:

AMERICAN MULTI-CINEMA, INC., a Missouri corporation

Name:
Title:

DATE:

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

GROVE CINEMAS, LLC, a Delaware limited liability company

By: Rick Caruso
Its: President

DATE:

SELLER:

        EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE:    _____

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to
purchase the License on the terms and conditions in the aforementioned Escrow Instructions as
modified by the provisions of this Addendum.

BUYER:

        AMERICAN MULTI-CINEMA, INC., a Missouri corporation

Name: John McDonald
Title: EVP

DATE:    8/4/21

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

        GROVE CINEMAS, LLC, a Delaware limited liability company

By: Rick Caruso
Its: President

DATE:    _____

5

SELLER:

_____

EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE:    _____

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to
purchase the License on the terms and conditions in the aforementioned Escrow Instructions as
modified by the provisions of this Addendum.

BUYER:

AMERICAN MULTI-CINEMA, INC., a Missouri corporation

_____
Name: _____
Title: _____

DATE:    _____

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

GROVE CINEMAS, LLC, a Delaware limited liability company

_____
By: Rick Caruso
Its: President

DATE:    August 3, 2021



**1748 Main St.
Escalon, CA 95320
Ph: (209) 838-1100
Fax: (209) 838-1115**

## ESCROW INSTRUCTIONS
### ALCOHOLIC BEVERAGE LICENSE TRANSFER ONLY

To:  California Business Escrow, Inc.
1748 Main Street
Escalon, CA
(209)-838-1100 FX (209)-838-1115

Escrow No. 21-6754-DB
Date: April 23, 2021
Escrow Officer: Diane Boudreau

CALIFORNIA BUSINESS ESCROW, INC. IS LICENSED BY THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION,
STATE OF CALIFORNIA, LICENSE NO. 963 7062

These instructions are given this April 23, 2021 by and between the SELLER (herein called SELLER/TRANSFEROR),
**PACIFIC THEATRES EXHIBITION CORP., A CALIFORNIA CORPORATION**
whose address is: **120 N. ROBERTSON BLVD, 3RD FL , LOS ANGELES, CA  90048**

And the BUYER (hereinafter called BUYER/TRANSFEREE),
**GROVE CINEMAS, LLC, A DELAWARE LIMITED LIABILITY COMPANY (OR ITS DESIGNEE)**
whose address is: **101 THE GROVE DRIVE, LOS ANGELES, CA  90036**

The subject of this escrow, which Seller/Transferor owns and agrees to sell and Buyer/Transferee agrees to purchase from Seller/Transferor, subject to all conditions and contingencies stated herein, is the following described alcoholic beverage license: **ON-SALE GENERAL EATING PLACE LICENSE NO. 47-562169** now issued for premises at: **189 THE GROVE DR UNIT L-80 , LOS ANGELES, CA  90036** for transfer to premises at **SAME** under the terms and conditions as stated herein.

IT IS AGREED BETWEEN THE SELLER/TRANSFEROR AND BUYER/TRANSFEREE THAT, REGARDLESS OF DATE HEREINAFTER SET FORTH FOR PAYMENT OF THE CONSIDERATION, NONE OF THE SAID CONSIDERATION WILL BE PAID FOR THE TRANSFER OF THE LICENSE(S) UNTIL SUCH TIME AS ESCROW HOLDER HAS BEEN NOTIFIED IN WRITING BY THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL ("ABC") THAT THE LICENSE HAS BEEN TRANSFERRED.

**Total Purchase Price of said license shall be the sum of $60,000.00**
Payable as follows:

| | |
|---|---|
| DEMAND NOTE | $60,000.00 |
| **TOTAL CONSIDERATION** | **$60,000.00** |



Seller's Initials  

Buyer's Initials  _____ _____ _____ _____

1.    Escrow shall be deemed opened when these instructions, signed by all parties, are deposited with Escrow Holder. Escrow shall close upon issuance of subject alcoholic beverage license to the Buyer/Transferee by the Department of Alcoholic Beverage Control.

2.    In addition to the Purchase Price, Buyer/Transferee agrees to pay 100% of the escrow fees and costs in this transaction. For its ordinary services hereunder, and immediately upon acceptance of this escrow, California Business Escrow, Inc., shall be entitled to a non-refundable escrow fee of $1,200.00 payable by Buyer/Transferee. Additional fees and costs which can be charged include, without limitation, courier, messenger, overnight mail. California Business Escrow, Inc., is authorized and instructed to deduct the costs from the Transferee's deposit and is released from any and all liability for disbursement of Buyer/Transferee's earnest money deposit.

3.    Buyer/Transferee agrees to pay 100% of the costs (including courier/overnight services) associated with processing creditor claims and/or claims by taxing authorities against Seller/Transferor, if applicable. There will be a charge of $25.00 for each claim paid through escrow, payable by Buyer/Transferee, and $100.00 for each state agency (SBOE, FTB, COUNTY TAX COLLECTOR, IRS, EDD) paid through escrow by Buyer/Transferee.

4.    In the event that escrow fails to consummate for any reason, California Business Escrow, Inc., is authorized to retain its costs and fees associated with this escrow from any money deposited with it without further authorization.

5.    Pursuant to Section 24073 of the Business and Professions Code of the State of California, Seller/Transferor and Buyer/Transferee will execute the Notice of Intended Transfer and deposit with Escrow Holder. Escrow Holder will record in the office of the county recorder and provide a copy of said notice, certified by the county recorder, to the Buyer/Transferee, to be deposited with the Department of Alcoholic Beverage Control.

6.    Within the latter of thirty days after application has been filed with the Department of Alcoholic Beverage Control or any extention of the filing period set forth in Section 24074.3 of the Business and Professions Code of the State of California, the Buyer/Transferee will cause to be handed to Escrow Holder the full amount of the Purchase Price as set out above, and any and all additional funds required by Escrow Holder to complete said transaction. Escrow Holder is instructed to then execute and forward ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

7.    If notified by the Department of Alcoholic Beverage Control that any tax agency, under the provisions of Section 24049 of the California Business and Professions Code, has a hold on the transfer of the ABC License, preventing the issuance of the ABC License to the Buyer/Transferee, then California Business Escrow, Inc., is authorized and instructed to pay, from funds on deposit in escrow, the amount of taxes demanded by any such agency and deduct same from Seller's/Transferor's proceeds without further authorization from any party required.

8.    All claims approved by Seller/Transferor shall be deemed to be bona fide and California Business Escrow, Inc. may pay such approved claims. Should any claims be filed, which the Seller/Transferor refuses to approve, all parties agree to proceed in accordance with Section 24074 of Business and Professions Code of the State of California.

9.    Buyer/Transferee shall make application for the transfer of the subject ABC license at the office of the Department of Alcoholic Beverage Control and the ABC License Transfer Fee shall be paid by the Buyer/Transferee. In the event the ABC License has not been issued to the Buyer/Transferee prior to JUNE 30, 2022 (next renewal date), both parties understand that it is the Buyer's/Transferee's responsibility to pay the ABC license renewal Fee to the Department of Alcoholic Beverage Control on or before the current renewal date from funds on deposit in escrow with no further instruction on the part of any party required. The Buyer/Transferee and Seller/Transferor further instruct and authorize Escrow Agent to pay from Buyer's/Transferee's funds on deposit in escrow all renewals that come due before the Authority to Close is received from the Department of Alcoholic Beverage Control. The Seller/Transferor warrants that the ABC License is currently in good standing with the Department of Alcoholic Beverage Control.

Seller's Initials _____        Buyer's Initials _____

10.    California Business Escrow, Inc is instructed to act in accordance with sections 24049 and 24074 of California Business and Professions Code.

11.    The parties have deposited with California Business Escrow, Inc (if applicable in this transaction), a form letter (known as a Rule 64B Request) under Section 24044 of the Business and Professions Code of California, whereby the Department of Alcoholic Beverage Control shall be requested to issue the subject license to the Buyer/Transferee with the same to be held by the Department of Alcoholic Beverage Control pending Buyer's/Transferee's request for the delivery of the same. Escrow Holder is to forward the said letter when informed that the proposed premises to be licensed have been sufficiently completed to comply with the requirement of the Department of Alcoholic Beverage Control and that the license be issued and escrow closed with no unnecessary delays.

12.    The parties hereto understand that this escrow is accepted by California Business Escrow, Inc., as Escrow Holder, predicated on the representation of the parties that there will be sufficient funds deposited into escrow to pay all creditors, costs, expenses and fees incurred in this escrow in full. If sufficient funds are not deposited, then California Business Escrow, Inc., has the absolute right, at it's sole option, to resign as escrow agent by giving at least ten (10) days prior written notice of such intent to all parties concerned, paying all costs, fees and expenses incurred in this escrow from any funds on deposit with it, and returning any remaining funds to the party who has deposited same.

13.    <u>NO REAL ESTATE, TAX OR LEGAL ADVICE:</u>
Escrow Holder does not provide any real estate, tax, legal or other advice concerning this transaction, or advice on the validity and effect of any of the documentation concerning the transaction. The parties are specifically directed to their own independent real estate professional, attorney and accountant for any such advice. The parties acknowledge that any comments made by Escrow Holder concerning the transaction are not meant to provide such advice, but only to aid in facilitating the performance of Escrow Holder's duties arising hereunder.

14.    <u>AFFILIATIONS</u>
Escrow Holder discloses to the parties that Michael Brewer is affliated with California Business Escrow, Inc.

15.    <u>ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS</u>

The signatories to these escrow instructions hereby direct Escrow Holder to also comply with the following:

A.    <u>Escrow Funds.</u>    All funds received in this escrow may be deposited with funds from other escrows in a general non-interest earning trust account in any state or federal bank of Escrow Holder's choosing. No interest shall be paid to the party depositing money with Escrow Holder. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but request that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check on this account.

B.    <u>Fees and Expenses.</u>    Buyer/Transferee agrees to pay Escrow Holder's customary and reasonable charges and fees and all other costs and expenses incurred by Escrow Holder on behalf of Buyer/Transferee. Escrow Holder may, in Escrow Holder's discretion, charge additional fees to the Buyer/Transferee for services which are beyond those usual in this type of escrow, attorney consultation fees, and any special courier fees above the standard courier use and charge those costs to the responsible Parties.

If, for any reason, Escrow Holder is required to appear in and/or defend any litigation, arbitration or administrative proceeding concerning this escrow as a party or a witness, the parties jointly and severally shall pay Escrow Holder for all reasonable costs, expenses and losses incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any reasonable fees and expenses incurred.

C.    <u>Disclosures.</u> Escrow Holder has no responsibility to give any disclosure not required by law to be given by an escrow agent.

Seller's Initials _____    Buyer's Initials _____

D.  **Instructions.** Escrow Holder need comply only with the written instructions deposited in this escrow. If Escrow Holder receives any form of contract pertaining to the transaction on which this escrow is based, Escrow Holder has no responsibility to enforce or comply with the terms of it except as described in these instructions. A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow, unless further written Escrow Instructions to do so are received and the additional escrow fees are deposited. Any purported oral instructions, amendment, supplement, modification, notice or demand deposited with Escrow Holder by the parties or either of them shall be ineffective and invalid. The Escrow Instructions and supporting documents may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document. The parties acknowledge and understand that you, as Escrow Holder, are not authorized to practice the law nor does Escrow Holder give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these Escrow Instructions. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers and liquor license brokers representing the parties to this escrow, the Department of Alcoholic Beverage Control, and any lender to a party.

E.  **Conflicts in Escrow Instructions; Disputes.**    If Escrow Holder receives any conflicting notices, instructions or demands, or cannot close this escrow for any reason, in Escrow Holder's reasonable sole discretion and without any liability, and without concern over the merits of any disputes between the parties, Escrow Holder may take any reasonable action Escrow Holder deems appropriate, including no further action in this escrow until the conflict is resolved, or the bringing of an interpleader or other litigation. The parties, jointly and severally, will pay promptly on demand any reasonable costs, expenses and losses incurred by Escrow Holder in complying with this instruction, including Escrow Holder's reasonable attorney's fees. Escrow Holder's reasonable fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between themselves.

F.  **Attorney's Fees.**    If any legal action, arbitration or other proceeding is brought relating to these instructions or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of the transactions involved in these instructions, the successful or prevailing party shall be entitled to recover reasonable costs incurred, including reasonable attorney's fees. In any collection of monies due hereunder without litigation, the collecting party shall be entitled to its reasonable costs incurred, including reasonable attorney's fees.

G.  **Closing; Cancellation; Payment of Fees and Costs.**    Escrow Holder shall close the escrow as soon as possible unless Escrow Holder receives a written notice of cancellation. On receipt at any time of a notice of cancellation, Escrow Holder shall mail a copy to all other parties at the addresses on these instructions. In the event of cancellation, Escrow Holder may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow. It is further understood that all notices, demands and instructions must be in writing and executed by all parties

H.  **Corrections.** In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to cooperate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it immediately upon notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, the successful or prevailing party shall be entitled to recover costs incurred, including reasonable attorney's fees. Escrow Holder is further instructed and authorized to make any corrections necessary regarding perfecting any and all premise addresses, corrections of any and all names and any and all other necessary documents that need to be re-recorded to reflect any changes, without further instruction from either parties.

I.  **Forms.** The parties understand the forms used by Escrow Holder are generally in use in the industry, and assume the responsibility of making certain those forms and the completion of them by Escrow Holder accurately describes the intended transaction.

J.  **Venue for Litigation.** All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction closest to San Joaquin County, California.

Seller's Initials _____    Buyer's Initials _____

K.  <u>Time is of the Essence.</u>        The parties shall cooperate with Escrow Holder in carrying out the escrow instructions they deposit with Escrow Holder and completing this escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments, documents, the Department of Alcoholic Beverage Control required documents, instructions, authorizations, or other items that are necessary to enable Escrow Holder to comply with demands made to Escrow Holder by third parties, or to otherwise carry out the terms of their instructions and close this escrow. Both parties further understand that "time is of the essence" and will facilitate any needed documents in a timely manner. Notwithstanding anything to the contrary, and in addition to any other contigency or condition, Buyer's/Transferee's obligation to purchase the license(s) shall be subject to the ABC approving the transfer to Buyer's/Transferee's and Seller's/Transferor's performance.

L.  <u>Destruction of Escrow File.</u>  Escrow Holder may destroy and dispose of all documents in this escrow after five (5) years of closing or cancellation of the escrow without liability or further notice to the parties. In the event of any dispute or litigation the escrow file will remain available and intact until such time as the matter has been resolved.

**Buyer/Transferee and Seller/Transferor acknowledge that they have read, understand, accept, approve and hereby create, execute, and enter into the foregoing escrow and instructions, each party acknowledges receipt of a copy hereof.**

SELLER:                                          BUYER:

PACIFIC THEATRES EXHIBITION CORP                 GROVE CINEMAS, LLC
A CALIFORNIA CORPORATION                         A DELAWARE LIMITED LIABILITY COMPANY

By:                                              By:

Jill Ellen Saperstein, Secretary
PRINT NAME AND TITLE                             PRINT NAME AND TITLE

Seller's Initials _____ _____ _____          Buyer's Initials _____ _____ _____ _____



**1748 Main St.**
**Escalon, CA 95320**
**Ph: (209) 838-1100**
**Fax: (209) 838-1115**

## ESCROW INSTRUCTIONS
### ALCOHOLIC BEVERAGE LICENSE TRANSFER ONLY

To:  California Business Escrow, Inc.
1748 Main Street
Escalon, CA
(209)-838-1100 FX (209)-838-1115

Escrow No. 21-6754-DB
Date: April 23, 2021
Escrow Officer: Diane Boudreau

CALIFORNIA BUSINESS ESCROW, INC. IS LICENSED BY THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION,
STATE OF CALIFORNIA, LICENSE NO. 963 7062

These instructions are given this April 23, 2021 by and between the SELLER (herein called SELLER/TRANSFEROR), **PACIFIC THEATRES EXHIBITION CORP., A CALIFORNIA CORPORATION** whose address is: **120 N. ROBERTSON BLVD, 3RD FL , LOS ANGELES, CA 90048**

And the BUYER (hereinafter called BUYER/TRANSFEREE),
**GROVE CINEMAS, LLC, A DELAWARE LIMITED LIABILITY COMPANY** whose address is: **101 THE GROVE DRIVE, LOS ANGELES, CA 90036**

The subject of this escrow, which Seller/Transferor owns and agrees to sell and Buyer/Transferee agrees to purchase from Seller/Transferor, subject to all conditions and contingencies stated herein, is the following described alcoholic beverage license: **ON-SALE GENERAL EATING PLACE LICENSE NO. 47-562169** now issued for premises at: **189 THE GROVE DR UNIT L-80 , LOS ANGELES, CA 90036** for transfer to premises at **SAME** under the terms and conditions as stated herein.

IT IS AGREED BETWEEN THE SELLER/TRANSFEROR AND BUYER/TRANSFEREE THAT, REGARDLESS OF DATE HEREINAFTER SET FORTH FOR PAYMENT OF THE CONSIDERATION, NONE OF THE SAID CONSIDERATION WILL BE PAID FOR THE TRANSFER OF THE LICENSE(S) UNTIL SUCH TIME AS ESCROW HOLDER HAS BEEN NOTIFIED IN WRITING BY THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL ("ABC") THAT THE LICENSE HAS BEEN TRANSFERRED.

**Total Purchase Price of said license shall be the sum of $60,000.00**
Payable as follows:

| | |
|---|---|
| DEMAND NOTE | $60,000.00 |
| **TOTAL CONSIDERATION** | $60,000.00 |

Seller's Initials  _____ _____    _____

Buyer's Initials  _____

1.    Escrow shall be deemed opened when these instructions, signed by all parties, are deposited with Escrow Holder. Escrow shall close upon issuance of subject alcoholic beverage license to the Buyer/Transferee by the Department of Alcoholic Beverage Control.

2.    In addition to the Purchase Price, Buyer/Transferee agrees to pay 100% of the escrow fees and costs in this transaction. For its ordinary services hereunder, and immediately upon acceptance of this escrow, California Business Escrow, Inc., shall be entitled to a non-refundable escrow fee of $1,200.00 payable by Buyer/Transferee. Additional fees and costs which can be charged include, without limitation, courier, messenger, overnight mail. California Business Escrow, Inc., is authorized and instructed to deduct the costs from the Transferee's deposit and is released from any and all liability for disbursement of Buyer/Transferee's earnest money deposit.

3.    Seller/Transferor agrees to pay 100% of the costs (including courier/overnight services) associated with processing creditor claims and/or claims by taxing authorities against Seller/Transferor, if applicable. There will be a charge of $25.00 for each claim paid through escrow, payable by and on behalf of Seller/Transferor, $50.00 for processing each disputed claim, payable by and on behalf of Seller/Transferor, and $100.00 for each State Agency (SBOE,FTB, COUNTY TAX COLLECTOR, IRS, EDD) paid through escrow by and on behalf of Seller/Transferor .

4.    In the event that escrow fails to consummate for any reason, California Business Escrow, Inc., is authorized to retain its costs and fees associated with this escrow from any money deposited with it without further authorization.

5.    Pursuant to Section 24073 of the Business and Professions Code of the State of California, Seller/Transferor and Buyer/Transferee will execute the Notice of Intended Transfer and deposit with Escrow Holder. Escrow Holder will record in the office of the county recorder and provide a copy of said notice, certified by the county recorder, to the Buyer/Transferee, to be deposited with the Department of Alcoholic Beverage Control.

6.    Within the latter of thirty days after application has been filed with the Department of Alcoholic Beverage Control or any extention of the filing period set forth in Section 24074.3 of the Business and Professions Code of the State of California, the Buyer/Transferee will cause to be handed to Escrow Holder the full amount of the Purchase Price as set out above, and any and all additional funds required by Escrow Holder to complete said transaction. Escrow Holder is instructed to then execute and forward ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

7     If notified by the Department of Alcoholic Beverage Control that any tax agency, under the provisions of Section 24049 of the California Business and Professions Code, has a hold on the transfer of the ABC License, preventing the issuance of the ABC License to the Buyer/Transferee, then California Business Escrow, Inc., is authorized and instructed to pay, from funds on deposit in escrow, the amount of taxes demanded by any such agency and deduct same from Seller's/Transferor's proceeds without further authorization from any party required.

8.    All claims approved by Seller/Transferor shall be deemed to be bona fide and California Business Escrow, Inc. may pay such approved claims. Should any claims be filed, which the Seller/Transferor refuses to approve, all parties agree to proceed in accordance with Section 24074 of Business and Professions Code of the State of California.

9.    Buyer/Transferee shall make application for the transfer of the subject ABC license at the office of the Department of Alcoholic Beverage Control and the ABC License Transfer Fee shall be paid by the Buyer/Transferee. In the event the ABC License has not been issued to the Buyer/Transferee prior to JUNE 30, 2022 (next renewal date), both parties understand that it is the Buyer's/Transferee's responsibility to pay the ABC license renewal Fee to the Department of Alcoholic Beverage Control on or before the current renewal date from funds on deposit in escrow with no further instruction on the part of any party required. The Buyer/Transferee and Seller/Transferor further instruct and authorize Escrow Agent to pay from Buyer's/Transferee's funds on deposit in escrow all renewals that come due before the Authority to Close is received from the Department of Alcoholic Beverage Control. The Seller/Transferor warrants that the ABC License is currently in good standing with the Department of Alcoholic Beverage Control.
==SELLER IS RESPONSIBLE FOR THE CURRENT RENEWAL DUE JUNE 30, 2021.==

Seller's Initials  _____                          Buyer's Initials 

10.   California Business Escrow, Inc is instructed to act in accordance with sections 24049 and 24074 of California Business and Professions Code.

11.   The parties have deposited with California Business Escrow, Inc (if applicable in this transaction), a form letter (known as a Rule 64B Request) under Section 24044 of the Business and Professions Code of California, whereby the Department of Alcoholic Beverage Control shall be requested to issue the subject license to the Buyer/Transferee with the same to be held by the Department of Alcoholic Beverage Control pending Buyer's/Transferee's request for the delivery of the same. Escrow Holder is to forward the said letter when informed that the proposed premises to be licensed have been sufficiently completed to comply with the requirement of the Department of Alcoholic Beverage Control and that the license be issued and escrow closed with no unnecessary delays.

12.   The parties hereto understand that this escrow is accepted by California Business Escrow, Inc., as Escrow Holder, predicated on the representation of the parties that there will be sufficient funds deposited into escrow to pay all creditors, costs, expenses and fees incurred in this escrow in full. If sufficient funds are not deposited, then California Business Escrow, Inc., has the absolute right, at it's sole option, to resign as escrow agent by giving at least ten (10) days prior written notice of such intent to all parties concerned, paying all costs, fees and expenses incurred in this escrow from any funds on deposit with it, and returning any remaining funds to the party who has deposited same.

13.   NO REAL ESTATE, TAX OR LEGAL ADVICE:
Escrow Holder does not provide any real estate, tax, legal or other advice concerning this transaction, or advice on the validity and effect of any of the documentation concerning the transaction. The parties are specifically directed to their own independent real estate professional, attorney and accountant for any such advice. The parties acknowledge that any comments made by Escrow Holder concerning the transaction are not meant to provide such advice, but only to aid in facilitating the performance of Escrow Holder's duties arising hereunder.

14.   AFFILIATIONS
Escrow Holder discloses to the parties that Michael Brewer is affliated with California Business Escrow, Inc.

15.   ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS

The signatories to these escrow instructions hereby direct Escrow Holder to also comply with the following:

A.   Escrow Funds.     All funds received in this escrow may be deposited with funds from other escrows in a general non-interest earning trust account in any state or federal bank of Escrow Holder's choosing. No interest shall be paid to the party depositing money with Escrow Holder. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but request that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check on this account.

B.   Fees and Expenses.    Buyer/Transferee agrees to pay Escrow Holder's customary and reasonable charges and fees and all other costs and expenses incurred by Escrow Holder on behalf of Buyer/Transferee. Escrow Holder may, in Escrow Holder's discretion, charge additional fees to the Buyer/Transferee for services which are beyond those usual in this type of escrow, attorney consultation fees, and any special courier fees above the standard courier use and charge those costs to the responsible Parties.

If, for any reason, Escrow Holder is required to appear in and/or defend any litigation, arbitration or administrative proceeding concerning this escrow as a party or a witness, the parties jointly and severally shall pay Escrow Holder for all reasonable costs, expenses and losses incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any reasonable fees and expenses incurred.

C.   Disclosures. Escrow Holder has no responsibility to give any disclosure not required by law to be given by an escrow agent.

Seller's Initials    _____  _____                      Buyer's Initials _____  _____

D. <u>Instructions</u>. Escrow Holder need comply only with the written instructions deposited in this escrow. If Escrow Holder receives any form of contract pertaining to the transaction on which this escrow is based, Escrow Holder has no responsibility to enforce or comply with the terms of it except as described in these instructions. A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow, unless further written Escrow Instructions to do so are received and the additional escrow fees are deposited. Any purported oral instructions, amendment, supplement, modification, notice or demand deposited with Escrow Holder by the parties or either of them shall be ineffective and invalid. The Escrow Instructions and supporting documents may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document. The parties acknowledge and understand that you, as Escrow Holder, are not authorized to practice the law nor does Escrow Holder give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these Escrow Instructions. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers and liquor license brokers representing the parties to this escrow, the Department of Alcoholic Beverage Control, and any lender to a party.

E. <u>Conflicts in Escrow Instructions; Disputes</u>.      If Escrow Holder receives any conflicting notices, instructions or demands, or cannot close this escrow for any reason, in Escrow Holder's reasonable sole discretion and without any liability, and without concern over the merits of any disputes between the parties, Escrow Holder may take any reasonable action Escrow Holder deems appropriate, including no further action in this escrow until the conflict is resolved, or the bringing of an interpleader or other litigation. The parties, jointly and severally. will pay promptly on demand any reasonable costs, expenses and losses incurred by Escrow Holder in complying with this instruction, including Escrow Holder's reasonable attorney's fees. Escrow Holder's reasonable fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between themselves.

F   <u>Attorney's Fees</u>.      If any legal action, arbitration or other proceeding is brought relating to these instructions or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of the transactions involved in these instructions, the successful or prevailing party shall be entitled to recover reasonable costs incurred, including reasonable attorney's fees. In any collection of monies due hereunder without litigation, the collecting party shall be entitled to its reasonable costs incurred, including reasonable attorney's fees.

G. <u>Closing: Cancellation: Payment of Fees and Costs</u>.      Escrow Holder shall close the escrow as soon as possible unless Escrow Holder receives a written notice of cancellation. On receipt at any time of a notice of cancellation, Escrow Holder shall mail a copy to all other parties at the addresses on these instructions. In the event of cancellation, Escrow Holder may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow. It is further understood that all notices, demands and instructions must be in writing and executed by all parties

H. <u>Corrections.</u> In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to cooperate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it immediately upon notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, the successful or prevailing party shall be entitled to recover costs incurred, including reasonable attorney's fees. Escrow Holder is further instructed and authorized to make any corrections necessary regarding perfecting any and all premise addresses, corrections of any and all names and any and all other necessary documents that need to be re-recorded to reflect any changes, without further instruction from either parties.

I.   <u>Forms</u>.  The parties understand the forms used by Escrow Holder are generally in use in the industry, and assume the responsibility of making certain those forms and the completion of them by Escrow Holder accurately describes the intended transaction.

J.   <u>Venue for Litigation</u>. All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction closest to San Joaquin County, California.

Seller's Initials  _____ _____ _____ _____          Buyer's Initials

K.  Time is of the Essence.    The parties shall cooperate with Escrow Holder in carrying out the escrow instructions they deposit with Escrow Holder and completing this escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments, documents, the Department of Alcoholic Beverage Control required documents, instructions, authorizations, or other items that are necessary to enable Escrow Holder to comply with demands made to Escrow Holder by third parties, or to otherwise carry out the terms of their instructions and close this escrow. Both parties further understand that "time is of the essence" and will facilitate any needed documents in a timely manner. Notwithstanding anything to the contrary, and in addition to any other contigency or condition, Buyer's/Transferee's obligation to purchase the license(s) shall be subject to the ABC approving the transfer to Buyer's/Transferee's and Seller's/Transferor's performance.

L.  Destruction of Escrow File.  Escrow Holder may destroy and dispose of all documents in this escrow after five (5) years of closing or cancellation of the escrow without liability or further notice to the parties. In the event of any dispute or litigation the escrow file will remain available and intact until such time as the matter has been resolved.

**Buyer/Transferee and Seller/Transferor acknowledge that they have read, understand, accept, approve and hereby create, execute, and enter into the foregoing escrow and instructions, each party acknowledges receipt of a copy hereof.**

SELLER:                                           BUYER:

PACIFIC THEATRES EXHIBITION CORP                 GROVE CINEMAS, LLC
A CALIFORNIA CORPORATION                         A DELAWARE LIMITED LIABILITY COMPANY

By:__  _                                         By:_____

_____                          _Rick Camso President_ Grove Cinemas, LLC
PRINT NAME AND TITLE                             PRINT NAME AND TITLE


Seller's Initials _____  _____               Buyer's Initials _____

# EXHIBIT "4"

## ADDENDUM TO ESCROW INSTRUCTIONS DATED APRIL 23, 2021

This Addendum to Escrow Instructions ("this Addendum") is entered into between Edward M. Wolkowitz, solely in his capacity as Chapter 7 Trustee (herein "Seller") for the bankruptcy Estate of Pacific Theatres Exhibition Corp. (herein "Debtor"), Case No. 2:21-bk-15007-BB, United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), and American Multi-Cinema, Inc., a Missouri corporation (herein, or its designee, "Buyer"), with respect to the Escrow Instructions Alcoholic Beverage License Transfer Only between the Debtor and AAB Cinemas, LLC, a Delaware limited liability company (herein "AAB Cinemas"), dated April 23, 2021 (herein "Escrow Instructions") for the sale and purchase of the On-Sale General Eating Place License #47-610831 (herein the "License").

1.      The Escrow Instructions and this Addendum, taken together, shall constitute the entire Agreement of the Parties. Buyer shall be substituted in place and stead of AAB Cinemas in the Escrow Instructions, with the consent of AAB Cinemas.

2.      The Agreement is contingent on (a) entry of an order, of the Bankruptcy Court approving the Agreement and authorizing Seller to close the sale in accord with its terms. If the Bankruptcy Court declines to approve the Agreement, the Agreement shall be null and void.

3.      The sale of the License to Buyer shall be free and clear of all liens, claims, mortgages, security interests, charges, and encumbrances ("Liens"), if any, with all such valid Liens to attach to the sale proceeds with the same validity, priority and effect as formerly to the License. Sections 7 and 8 of the Escrow Instructions are superseded by this Section 3, and are accordingly deleted.

4.      The Total Purchase Price for the License shall be Eighty-Five Thousand Dollars ($85,000.00), $8,500.00 of which shall be paid to Seller as a deposit upon the execution of this Addendum. Buyer acknowledges that the renewal license fee due May 31, 2021 has been paid.

5.      Payments to Seller shall be made by certified check payable to "Edward M. Wolkowitz, Chapter 7 Trustee for Pacific Theatres Exhibition Corp.", at 800 S. Figueroa Street, #1260, Los Angeles, California 90017.

6.      Buyer acknowledges that the approval by the Bankruptcy Court of the sale contemplated in the Agreement shall be subject to overbidding in accordance with bankruptcy law and other applicable statutes, regulations and rules of the Bankruptcy Court.  Buyer acknowledges that overbidders may be present at the hearing regarding the motion to approve the sale of the License and that the Seller has a duty to (a) attempt to obtain overbids and (b) to sell the License to the bidder who submits the best bid.  Seller shall proceed with all due haste in requesting and securing a hearing date before the Bankruptcy Court for the approval of the sale of the License contemplated in this Agreement.  The hearing before the Bankruptcy Court shall be on or before September 15, 2021, unless otherwise agreed upon between Buyer and Seller or otherwise set by the Bankruptcy Court.

1

7.     Buyer shall have the right to be present at the hearing regarding the motion to approve the sale to the Buyer and to participate in any bidding that may occur. Seller shall inform Buyer of the date, time, and location of the hearing regarding the motion to approve the sale to the Buyer. Buyer acknowledges and agrees, however, that the Bankruptcy Court will require the Seller to sell the License to the qualified bidder who submits the best bid.

8.     If the Buyer is the successful purchaser and the Buyer has not breached the Agreement, the deposit of the Buyer shall be fully credited toward the final purchase price. If an overbidder is the successful purchaser, the Seller shall return to the Buyer all funds tendered by the Buyer in connection with the sale contemplated by the Agreement including, but not limited to, the deposit; provided, that the Buyer has not breached any provision of the Agreement. If the Buyer is the successful purchaser and the Buyer has breached the Agreement and fails to close the sale, the deposit of the Buyer may be retained by the Seller as liquidated damages.

9.     If any liens, claims of co-owners, tax consequences, claims of parties to executory contracts or other encumbrances against or interests in the License, whether or not previously known to the Seller, make the sale of the License infeasible, unprofitable or insufficiently profitable for the Estate, then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transactions contemplated by the Agreement. Likewise, if any party makes an offer involving or related in any fashion to the License which would provide a greater benefit to the Estate or its creditors (or enable the Seller to avoid or resolve existing or future litigation), then the Seller may, at his option, at any time on or before the close of escrow and in his sole discretion, refuse to complete the transactions contemplated by the Agreement. In such event, the Buyer's sole recourse against the Estate shall be to recover all funds tendered by the Buyer to the Seller in connection with the sale contemplated by the Agreement including, but not limited to, the deposit.

10.     Buyer hereby represents, acknowledges and agrees for the Buyer and the Buyer's successors, heirs and assigns, that:

a.   The interests of the Estate, if any, in the License are being sold in "AS IS, WHERE IS, WITH ALL FAULTS" present condition, without representations or warranties of any kind or nature whatsoever whether express or implied.

b.   The Seller is a bankruptcy trustee and any interest acquired by the Estate in the License was acquired for a short period of time due to the bankruptcy case. Neither the Estate nor the Seller has acquired any interest in the License for the purpose of maintaining the License, but rather for the sole purpose of liquidating the License for the benefit of the creditors of the Estate.

c.   Due to the unique nature of bankruptcy cases, the Seller has not personally audited, investigated or inspected the License and has not personally used the License. The Buyer and the Seller further agree that it is not economical or reasonable for the Seller to audit, investigate or inspect the License under these circumstances because neither the Estate nor the Seller acquired an interest in the License, if any, for the purpose of using the License. Buyer wishes to acquire the License for the Buyer's

2

particular use. Buyer has greater assets and facilities than the Estate to make a diligent audit, investigation and inspection of the License.

d.  Buyer has been given an extensive opportunity to inspect and investigate the License, independently and through agents of the Buyer's choosing. The Buyer shall continue to have the right to inspect the License. Buyer acknowledges that in purchasing the License, the Buyer is not relying in any manner on the Seller, the Seller's attorney or any other agents of the Seller or the Estate regarding the characteristics or condition of the License or any other aspect of the License. Buyer acknowledges that the Buyer is not relying in any manner upon any information regarding the License provided in any manner by the Seller, the Seller's attorney or any other agent of the Seller. Buyer acknowledges that the Buyer is not relying on the Seller, the Seller's attorney or any other agents of the Seller or the Estate regarding whether the License is in compliance with any statutes, codes, regulations, ordinances or other laws of any city, county, state, federal government or any other governmental agency. Buyer assumes all responsibility to check with the appropriate governmental agencies for the intended use of the License and Buyer holds harmless the Seller, the Seller's attorney, the Estate, the United States Bankruptcy Court and the Seller's agents as to suitability of the License for the Buyer's intended use.

e.  Although there could be defects in and on the License, including, but not limited to, title defects, Buyer relieves the Seller, the Seller's attorneys and the Seller's agents of any and all obligations to inspect the License or investigate any matter involving the License, including, but not limited to, the history of the License, its condition, any License defects, its potential value to the Buyer or the public and any aspects of title to the License.

f.  Buyer represents and warrants that the Buyer is relying solely upon inspection(s) of the License by the Buyer and not upon any representation made by any person whomsoever, and that Buyer is purchasing the License in the condition in which it now is, without any obligation on the part of the Seller to make any changes to the License or to maintain the License. In summary, the sale is completely "AS IS, WHERE IS, WITH ALL FAULTS." The consummation of this transaction shall constitute an acknowledgement by Buyer that the License has been accepted without representation or warranty of any kind or nature and in its present "AS IS, WHERE IS, WITH ALL FAULTS" condition.

11.    Buyer acknowledges and agrees that the Seller is acting in all respects in connection with the Agreement solely as a bankruptcy trustee, the representative of the Estate, and not in the Seller's personal or individual capacity. Buyer acknowledges and agrees that the Seller does not have and shall not have any personal liability of any kind under any provision of the Agreement. With respect to any and all disputes arising from or in any manner connected with the Agreement, Buyer hereby waives any and all rights to (a) sue the Seller in his personal capacity, (b) to recover a judgment against the Seller personally or (c) to obtain any other form of relief against the Seller in his personal capacity. In the event of any breach of the Agreement

3

by the Seller or the occurrence of any other dispute arising from or in any manner related to such breach or dispute shall be asserted against the Estate only and not the Seller.

12.    The Seller and the Buyer hereby consent to the sole jurisdiction of the Bankruptcy Court, to resolve any dispute, claim or controversy between the parties arising out of or relating to the License, the Agreement, or any matter that is the subject of the Agreement. All parties agree that such a dispute would constitute a core proceeding and all parties waive their right, if any, to a jury in such a proceeding. The Bankruptcy Court shall retain exclusive jurisdiction to resolve any dispute, claim or controversy between the parties arising out of or relating to the License, the Agreement or any matter that is the subject of the Agreement.

13.    The Agreement shall be governed by and construed in accordance with the federal laws of the United States of America including, but not limited to, the Bankruptcy Code. To the extent that any state law applies (and which is not superseded by federal law), the Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law or conflict of law provision or rule of the State of California or any other non-federal jurisdiction other than the State of California. The Agreement has been entered into in the State of California.

14.    The foregoing terms and conditions supersede and replace any inconsistent provisions in the referenced Escrow Instructions. All other terms and conditions of said Escrow Instructions shall remain in full force and effect and are incorporated by reference herein.

15.    This Addendum may be executed in counterparts and each executed counterpart shall be deemed an original and all of which may be taken together and shall constitute one instrument. Executed signature pages to this Agreement may be delivered by facsimile, or by email in portable document format (.pdf) and delivery of the signature page by such method will have the same effect as if the original signature had been delivered by the sending party to the receiving party.

16.    If this Addendum is not accepted in writing by Buyer and an executed copy personally delivered to the Seller on or before August 6, 2021, this Addendum shall be null and void, and neither Seller nor Buyer shall have any further rights or obligations hereunder.

[SIGNATURES ON FOLLOWING PAGE]

SELLER: _____

         EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE:       AUG 0 5 2021

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to purchase the License on the terms and conditions in the aforementioned Escrow Instructions as modified by the provisions of this Addendum.

BUYER:

         AMERICAN MULTI-CINEMA, INC., a Missouri corporation

         Name: _____
         Title: _____

DATE: _____

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

         AAB CINEMAS, LLC, a Delaware limited liability company

         By: Rick Caruso
         Its: President

DATE: _____

SELLER:

_____

       EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE:     _____

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to
purchase the License on the terms and conditions in the aforementioned Escrow Instructions as
modified by the provisions of this Addendum.

BUYER:

       AMERICAN MULTI-CINEMA, INC., a Missouri corporation

_____

Name: John McDonald

Title: EVP

DATE:     8/4/21

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

       AAB CINEMAS, LLC, a Delaware limited liability company

_____

By: Rick Caruso
Its: President

DATE:     _____

SELLER:

     EDWARD M. WOLKOWITZ, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF PACIFIC THEATRES EXHIBITION CORP.

DATE: _____

Buyer accepts and agrees to the terms and conditions set forth in this Addendum and agrees to
purchase the License on the terms and conditions in the aforementioned Escrow Instructions as
modified by the provisions of this Addendum.

BUYER:

     AMERICAN MULTI-CINEMA, INC., a Missouri corporation

     Name:_____
     Title:_____

DATE: _____

CONSENT AS TO SUBSTITUTON OF BUYER IN ESCROW INSTRUCTONS:

     AAB CINEMAS, LLC, a Delaware limited liability company

     By: Rick Caruso
     Its: President

DATE: _August 3, 2021_



**1748 Main St.
Escalon, CA 95320
Ph: (209) 838-1100
Fax: (209) 838-1115**

## ESCROW INSTRUCTIONS
## ALCOHOLIC BEVERAGE LICENSE TRANSFER ONLY

To:  California Business Escrow, Inc.
1748 Main Street
Escalon, CA
(209)-838-1100  FX (209)-838-1115

Escrow No. 21-6755-DB
Date: April 23, 2021
Escrow Officer: Diane Boudreau

CALIFORNIA BUSINESS ESCROW, INC. IS LICENSED BY THE DEPARTMENT OF FINANCIAL PROTECTION
AND INNOVATION,
STATE OF CALIFORNIA, LICENSE NO. 963 7062

These instructions are given this April 23, 2021 by and between the SELLER (herein called SELLER/TRANSFEROR),
**PACIFIC THEATRES EXHIBITION CORP., A CALIFORNIA CORPORATION**
whose address is: **120 N. ROBERTSON BLVD, 3RD FL , LOS ANGELES, CA  90048**

And the BUYER (hereinafter called BUYER/TRANSFEREE),
**AAB CINEMAS, LLC, A DELAWARE LIMITED LIABILITY COMPANY (OR ITS DESIGNEE)**
whose address is: **101 THE GROVE DRIVE , LOS ANGELES, CA  90036**

The subject of this escrow, which Seller/Transferor owns and agrees to sell and Buyer/Transferee agrees to purchase from
Seller/Transferor, subject to all conditions and contingencies stated herein, is the following described alcoholic beverage
license: **ON-SALE GENERAL EATING PLACE LICENSE NO. 47-610831** now issued for premises at: **322
AMERICANA WAY , GLENDALE, CA  91210** for transfer to premises at SAME under the terms and conditions as stated
herein.

IT IS AGREED BETWEEN THE SELLER/TRANSFEROR AND BUYER/TRANSFEREE THAT, REGARDLESS OF
DATE HEREINAFTER SET FORTH FOR PAYMENT OF THE CONSIDERATION, NONE OF THE SAID
CONSIDERATION WILL BE PAID FOR THE TRANSFER OF THE LICENSE(S) UNTIL SUCH TIME AS ESCROW
HOLDER HAS BEEN NOTIFIED IN WRITING BY THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL
("ABC") THAT THE LICENSE HAS BEEN TRANSFERRED.

**Total Purchase Price of said license shall be the sum of $60,000.00**
Payable as follows:

| | |
|---|---|
| DEMAND NOTE | $60,000.00 |
| TOTAL CONSIDERATION | $60,000.00 |

Seller's Initials _____     Buyer's Initials _____ _____ _____ _____

1.  Escrow shall be deemed opened when these instructions, signed by all parties, are deposited with Escrow Holder. Escrow shall close upon issuance of subject alcoholic beverage license to the Buyer/Transferee by the Department of Alcoholic Beverage Control.

2.  In addition to the Purchase Price, Buyer/Transferee agrees to pay 100% of the escrow fees and costs in this transaction. For its ordinary services hereunder, and immediately upon acceptance of this escrow, California Business Escrow, Inc., shall be entitled to a non-refundable escrow fee of $1,200.00 payable by Buyer/Transferee. Additional fees and costs which can be charged include, without limitation, courier, messenger, overnight mail. California Business Escrow, Inc., is authorized and instructed to deduct the costs from the Transferee's deposit and is released from any and all liability for disbursement of Buyer/Transferee's earnest money deposit.

3.  Buyer/Transferee agrees to pay 100% of the costs (including courier/overnight services) associated with processing creditor claims and/or claims by taxing authorities against Seller/Transferor, if applicable. There will be a charge of $25.00 for each claim paid through escrow, payable by Buyer/Transferee, and $100.00 for each state agency (SBOE, FTB, COUNTY TAX COLLECTOR, IRS, EDD) paid through escrow by Buyer/Transferee.

4.  In the event that escrow fails to consummate for any reason, California Business Escrow, Inc., is authorized to retain its costs and fees associated with this escrow from any money deposited with it without further authorization.

5.  Pursuant to Section 24073 of the Business and Professions Code of the State of California, Seller/Transferor and Buyer/Transferee will execute the Notice of Intended Transfer and deposit with Escrow Holder. Escrow Holder will record in the office of the county recorder and provide a copy of said notice, certified by the county recorder, to the Buyer/Transferee, to be deposited with the Department of Alcoholic Beverage Control.

6.  Within the latter of thirty days after application has been filed with the Department of Alcoholic Beverage Control or any extention of the filing period set forth in Section 24074.3 of the Business and Professions Code of the State of California, the Buyer/Transferee will cause to be handed to Escrow Holder the full amount of the Purchase Price as set out above, and any and all additional funds required by Escrow Holder to complete said transaction. Escrow Holder is instructed to then execute and forward ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

7.  If notified by the Department of Alcoholic Beverage Control that any tax agency, under the provisions of Section 24049 of the California Business and Professions Code, has a hold on the transfer of the ABC License, preventing the issuance of the ABC License to the Buyer/Transferee, then California Business Escrow, Inc., is authorized and instructed to pay, from funds on deposit in escrow, the amount of taxes demanded by any such agency and deduct same from Seller's/Transferor's proceeds without further authorization from any party required.

8.  All claims approved by Seller/Transferor shall be deemed to be bona fide and California Business Escrow, Inc. may pay such approved claims. Should any claims be filed, which the Seller/Transferor refuses to approve, all parties agree to proceed in accordance with Section 24074 of Business and Professions Code of the State of California.

9.  Buyer/Transferee shall make application for the transfer of the subject ABC license at the office of the Department of Alcoholic Beverage Control and the ABC License Transfer Fee shall be paid by the Buyer/Transferee. In the event the ABC License has not been issued to the Buyer/Transferee prior to MAY 31, 2022 (next renewal date), both parties understand that it is the Buyer's/Transferee's responsibility to pay the ABC license renewal Fee to the Department of Alcoholic Beverage Control on or before the current renewal date from funds on deposit in escrow with no further instruction on the part of any party required. The Buyer/Transferee and Seller/Transferor further instruct and authorize Escrow Agent to pay from Buyer's/Transferee's funds on deposit in escrow all renewals that come due before the Authority to Close is received from the Department of Alcoholic Beverage Control. The Seller/Transferor warrants that the ABC License is currently in good standing with the Department of Alcoholic Beverage Control.

Seller's Initials  _____                    Buyer's Initials  _____ _____ _____ _____

10.    California Business Escrow, Inc is instructed to act in accordance with sections 24049 and 24074 of California Business and Professions Code.

11.    The parties have deposited with California Business Escrow, Inc (if applicable in this transaction), a form letter (known as a Rule 64B Request) under Section 24044 of the Business and Professions Code of California, whereby the Department of Alcoholic Beverage Control shall be requested to issue the subject license to the Buyer/Transferee with the same to be held by the Department of Alcoholic Beverage Control pending Buyer's/Transferee's request for the delivery of the same. Escrow Holder is to forward the said letter when informed that the proposed premises to be licensed have been sufficiently completed to comply with the requirement of the Department of Alcoholic Beverage Control and that the license be issued and escrow closed with no unnecessary delays.

12.    The parties hereto understand that this escrow is accepted by California Business Escrow, Inc., as Escrow Holder, predicated on the representation of the parties that there will be sufficient funds deposited into escrow to pay all creditors, costs, expenses and fees incurred in this escrow in full. If sufficient funds are not deposited, then California Business Escrow, Inc., has the absolute right, at it's sole option, to resign as escrow agent by giving at least ten (10) days prior written notice of such intent to all parties concerned, paying all costs, fees and expenses incurred in this escrow from any funds on deposit with it, and returning any remaining funds to the party who has deposited same.

13.    NO REAL ESTATE, TAX OR LEGAL ADVICE:
Escrow Holder does not provide any real estate, tax, legal or other advice concerning this transaction, or advice on the validity and effect of any of the documentation concerning the transaction. The parties are specifically directed to their own independent real estate professional, attorney and accountant for any such advice. The parties acknowledge that any comments made by Escrow Holder concerning the transaction are not meant to provide such advice, but only to aid in facilitating the performance of Escrow Holder's duties arising hereunder.

14.    AFFILIATIONS
Escrow Holder discloses to the parties that Michael Brewer is affiliated with California Business Escrow, Inc.

15.    ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS

The signatories to these escrow instructions hereby direct Escrow Holder to also comply with the following:

A.    Escrow Funds.        All funds received in this escrow may be deposited with funds from other escrows in a general non-interest earning trust account in any state or federal bank of Escrow Holder's choosing. No interest shall be paid to the party depositing money with Escrow Holder. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but request that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check on this account.

B.    Fees and Expenses.    Buyer/Transferee agrees to pay Escrow Holder's customary and reasonable charges and fees and all other costs and expenses incurred by Escrow Holder on behalf of Buyer/Transferee. Escrow Holder may, in Escrow Holder's discretion, charge additional fees to the Buyer/Transferee for services which are beyond those usual in this type of escrow, attorney consultation fees, and any special courier fees above the standard courier use and charge those costs to the responsible Parties.

If, for any reason, Escrow Holder is required to appear in and/or defend any litigation, arbitration or administrative proceeding concerning this escrow as a party or a witness, the parties jointly and severally shall pay Escrow Holder for all reasonable costs, expenses and losses incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any reasonable fees and expenses incurred.

C.    Disclosures. Escrow Holder has no responsibility to give any disclosure not required by law to be given by an escrow agent.

Seller's Initials  _____  _____                    Buyer's Initials  _____  _____  _____  _

D.  Instructions. Escrow Holder need comply only with the written instructions deposited in this escrow. If Escrow Holder receives any form of contract pertaining to the transaction on which this escrow is based, Escrow Holder has no responsibility to enforce or comply with the terms of it except as described in these instructions. A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow, unless further written Escrow Instructions to do so are received and the additional escrow fees are deposited. Any purported oral instructions, amendment, supplement, modification, notice or demand deposited with Escrow Holder by the parties or either of them shall be ineffective and invalid. The Escrow Instructions and supporting documents may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document. The parties acknowledge and understand that you, as Escrow Holder, are not authorized to practice the law nor does Escrow Holder give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these Escrow Instructions. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers and liquor license brokers representing the parties to this escrow, the Department of Alcoholic Beverage Control, and any lender to a party.

E.  Conflicts in Escrow Instructions; Disputes.    If Escrow Holder receives any conflicting notices, instructions or demands, or cannot close this escrow for any reason, in Escrow Holder's reasonable sole discretion and without any liability, and without concern over the merits of any disputes between the parties, Escrow Holder may take any reasonable action Escrow Holder deems appropriate, including no further action in this escrow until the conflict is resolved, or the bringing of an interpleader or other litigation. The parties, jointly and severally, will pay promptly on demand any reasonable costs, expenses and losses incurred by Escrow Holder in complying with this instruction, including Escrow Holder's reasonable attorney's fees. Escrow Holder's reasonable fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between themselves.

F.  Attorney's Fees.    If any legal action, arbitration or other proceeding is brought relating to these instructions or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of the transactions involved in these instructions, the successful or prevailing party shall be entitled to recover reasonable costs incurred, including reasonable attorney's fees. In any collection of monies due hereunder without litigation, the collecting party shall be entitled to its reasonable costs incurred, including reasonable attorney's fees.

G.  Closing; Cancellation; Payment of Fees and Costs.    Escrow Holder shall close the escrow as soon as possible unless Escrow Holder receives a written notice of cancellation. On receipt at any time of a notice of cancellation, Escrow Holder shall mail a copy to all other parties at the addresses on these instructions. In the event of cancellation, Escrow Holder may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow. It is further understood that all notices, demands and instructions must be in writing and executed by all parties

H.  Corrections. In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to cooperate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it immediately upon notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, the successful or prevailing party shall be entitled to recover costs incurred, including reasonable attorney's fees. Escrow Holder is further instructed and authorized to make any corrections necessary regarding perfecting any and all premise addressess, corrections of any and all names and any and all other necessary documents that need to be re-recorded to reflect any changes, without further instruction from either parties.

I.  Forms.  The parties understand the forms used by Escrow Holder are generally in use in the industry, and assume the responsibility of making certain those forms and the completion of them by Escrow Holder accurately describes the intended transaction.

Seller's Initials    _____        Buyer's Initials    _____  _____

J.   Venue for Litigation. All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction closest to San Joaquin County, California.

K.   Time is of the Essence.     The parties shall cooperate with Escrow Holder in carrying out the escrow instructions they deposit with Escrow Holder and completing this escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments, documents, the Department of Alcoholic Beverage Control required documents, instructions, authorizations, or other items that are necessary to enable Escrow Holder to comply with demands made to Escrow Holder by third parties, or to otherwise carry out the terms of their instructions and close this escrow. Both parties further understand that "time is of the essence" and will facilitate any needed documents in a timely manner. Notwithstanding anything to the contrary, and in addition to any other contigency or condition, Buyer's/Transferee's obligation to purchase the license(s) shall be subject to the ABC approving the transfer to Buyer's/Transferee's and Seller's/Transferor's performance.

L.   Destruction of Escrow File. Escrow Holder may destroy and dispose of all documents in this escrow after five (5) years of closing or cancellation of the escrow without liability or further notice to the parties. In the event of any dispute or litigation the escrow file will remain available and intact until such time as the matter has been resolved.

**Buyer/Transferee and Seller/Transferor acknowledge that they have read, understand, accept, approve and hereby create, execute, and enter into the foregoing escrow and instructions, each party acknowledges receipt of a copy hereof.**

SELLER:                                                 BUYER:

PACIFIC THEATRES EXHIBITION CORP                        AAB CINEMAS, LLC
A CALIFORNIA CORPORATION                                A DELAWARE LIMITED LIABILITY COMPANY

By: _____                           By: _____

_Jill Ellen Saperstein, Secretary_                      _____
PRINT NAME AND TITLE                                    PRINT NAME AND TITLE

Seller's Initials  _____                            Buyer's Initials  _____



**1748 Main St.**
**Escalon, CA 95320**
**Ph: (209) 838-1100**
**Fax: (209) 838-1115**

## ESCROW INSTRUCTIONS
### ALCOHOLIC BEVERAGE LICENSE TRANSFER ONLY

To:  California Business Escrow, Inc.
1748 Main Street
Escalon, CA
(209)-838-1100  FX (209)-838-1115

Escrow No. 21-6755-DB
Date: April 23, 2021
Escrow Officer: Diane Boudreau

CALIFORNIA BUSINESS ESCROW, INC. IS LICENSED BY THE DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION,
STATE OF CALIFORNIA, LICENSE NO. 963 7062

These instructions are given this April 23, 2021 by and between the SELLER (herein called SELLER/TRANSFEROR),
**PACIFIC THEATRES EXHIBITION CORP., A CALIFORNIA CORPORATION**
whose address is: 120 N. ROBERTSON BLVD, 3RD FL , LOS ANGELES, CA  90048

And the BUYER (hereinafter called BUYER/TRANSFEREE),
**AAB CINEMAS, LLC, A DELAWARE LIMITED LIABILITY COMPANY**
whose address is: **101 THE GROVE DRIVE , LOS ANGELES, CA  90036**

The subject of this escrow, which Seller/Transferor owns and agrees to sell and Buyer/Transferee agrees to purchase from Seller/Transferor, subject to all conditions and contingencies stated herein, is the following described alcoholic beverage license: **ON-SALE GENERAL EATING PLACE LICENSE NO. 47-610831** now issued for premises at: **322 AMERICANA WAY , GLENDALE, CA  91210** for transfer to premises at SAME under the terms and conditions as stated herein.

IT IS AGREED BETWEEN THE SELLER/TRANSFEROR AND BUYER/TRANSFEREE THAT, REGARDLESS OF DATE HEREINAFTER SET FORTH FOR PAYMENT OF THE CONSIDERATION, NONE OF THE SAID CONSIDERATION WILL BE PAID FOR THE TRANSFER OF THE LICENSE(S) UNTIL SUCH TIME AS ESCROW HOLDER HAS BEEN NOTIFIED IN WRITING BY THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL ("ABC") THAT THE LICENSE HAS BEEN TRANSFERRED.

**Total Purchase Price of said license shall be the sum of $60,000.00**
Payable as follows:

| | |
|---|---|
| DEMAND NOTE | $60,000.00 |
| TOTAL CONSIDERATION | $60,000.00 |

Seller's Initials  _____ _____ ___   _____

Buyer's Initials

1.  Escrow shall be deemed opened when these instructions, signed by all parties, are deposited with Escrow Holder. Escrow shall close upon issuance of subject alcoholic beverage license to the Buyer/Transferee by the Department of Alcoholic Beverage Control.

2.  In addition to the Purchase Price, Buyer/Transferee agrees to pay 100% of the escrow fees and costs in this transaction. For its ordinary services hereunder, and immediately upon acceptance of this escrow, California Business Escrow, Inc., shall be entitled to a non-refundable escrow fee of $1,200.00 payable by Buyer/Transferee. Additional fees and costs which can be charged include, without limitation, courier, messenger, overnight mail. California Business Escrow, Inc., is authorized and instructed to deduct the costs from the Transferee's deposit and is released from any and all liability for disbursement of Buyer/Transferee's earnest money deposit.

3.  Seller/Transferor agrees to pay 100% of the costs (including courier/overnight services) associated with processing creditor claims and/or claims by taxing authorities against Seller/Transferor, if applicable. There will be a charge of $25.00 for each claim paid through escrow, payable by and on behalf of Seller/Transferor, $50.00 for processing each disputed claim, payable by and on behalf of Seller/Transferor, and $100.00 for each State Agency (SBOE,FTB, COUNTY TAX COLLECTOR, IRS, EDD) paid through escrow by and on behalf of Seller/Transferor .

4.  In the event that escrow fails to consummate for any reason, California Business Escrow, Inc., is authorized to retain its costs and fees associated with this escrow from any money deposited with it without further authorization.

5.  Pursuant to Section 24073 of the Business and Professions Code of the State of California. Seller/Transferor and Buyer/Transferee will execute the Notice of Intended Transfer and deposit with Escrow Holder. Escrow Holder will record in the office of the county recorder and provide a copy of said notice, certified by the county recorder, to the Buyer/Transferee, to be deposited with the Department of Alcoholic Beverage Control.

6.  Within the latter of thirty days after application has been filed with the Department of Alcoholic Beverage Control or any extention of the filing period set forth in Section 24074.3 of the Business and Professions Code of the State of California, the Buyer/Transferee will cause to be handed to Escrow Holder the full amount of the Purchase Price as set out above, and any and all additional funds required by Escrow Holder to complete said transaction. Escrow Holder is instructed to then execute and forward ABC form 226 to the Department of Alcoholic Beverage Control, indicating that the consideration has been deposited into the escrow.

7.  If notified by the Department of Alcoholic Beverage Control that any tax agency, under the provisions of Section 24049 of the California Business and Professions Code, has a hold on the transfer of the ABC License, preventing the issuance of the ABC License to the Buyer/Transferee, then California Business Escrow, Inc., is authorized and instructed to pay, from funds on deposit in escrow, the amount of taxes demanded by any such agency and deduct same from Seller's/Transferor's proceeds without further authorization from any party required.

8.  All claims approved by Seller/Transferor shall be deemed to be bona fide and California Business Escrow, Inc. may pay such approved claims. Should any claims be filed, which the Seller/Transferor refuses to approve, all parties agree to proceed in accordance with Section 24074 of Business and Professions Code of the State of California.

9.  Buyer/Transferee shall make application for the transfer of the subject ABC license at the office of the Department of Alcoholic Beverage Control and the ABC License Transfer Fee shall be paid by the Buyer/ Transferee. In the event the ABC License has not been issued to the Buyer/Transferee prior to MAY 31, 2022 (next renewal date), both parties understand that it is the Buyer's/Transferee's responsibility to pay the ABC license renewal Fee to the Department of Alcoholic Beverage Control on or before the current renewal date from funds on deposit in escrow with no further instruction on the part of any party required. The Buyer/Transferee and Seller/Transferor further instruct and authorize Escrow Agent to pay from Buyer's/Transferee's funds on deposit in escrow all renewals that come due before the Authority to Close is received from the Department of Alcoholic Beverage Control. The Seller/Transferor warrants that the ABC License is currently in good standing with the Department of Alcoholic Beverage Control.

    SELLER IS RESPONSIBLE FOR THE CURRENT RENEWAL DUE MAY 31, 2021.

Seller's Initials _____                          Buyer's Initials _____



10. California Business Escrow, Inc is instructed to act in accordance with sections 24049 and 24074 of California Business and Professions Code.

11. The parties have deposited with California Business Escrow, Inc (if applicable in this transaction), a form letter (known as a Rule 64B Request) under Section 24044 of the Business and Professions Code of California, whereby the Department of Alcoholic Beverage Control shall be requested to issue the subject license to the Buyer/Transferee with the same to be held by the Department of Alcoholic Beverage Control pending Buyer's/Transferee's request for the delivery of the same. Escrow Holder is to forward the said letter when informed that the proposed premises to be licensed have been sufficiently completed to comply with the requirement of the Department of Alcoholic Beverage Control and that the license be issued and escrow closed with no unnecessary delays.

12. The parties hereto understand that this escrow is accepted by California Business Escrow, Inc., as Escrow Holder, predicated on the representation of the parties that there will be sufficient funds deposited into escrow to pay all creditors, costs, expenses and fees incurred in this escrow in full. If sufficient funds are not deposited, then California Business Escrow, Inc., has the absolute right, at it's sole option, to resign as escrow agent by giving at least ten (10) days prior written notice of such intent to all parties concerned, paying all costs, fees and expenses incurred in this escrow from any funds on deposit with it, and returning any remaining funds to the party who has deposited same.

13. NO REAL ESTATE, TAX OR LEGAL ADVICE:
Escrow Holder does not provide any real estate, tax, legal or other advice concerning this transaction, or advice on the validity and effect of any of the documentation concerning the transaction. The parties are specifically directed to their own independent real estate professional, attorney and accountant for any such advice. The parties acknowledge that any comments made by Escrow Holder concerning the transaction are not meant to provide such advice, but only to aid in facilitating the performance of Escrow Holder's duties arising hereunder.

14. AFFILIATIONS
Escrow Holder discloses to the parties that Michael Brewer is affiliated with California Business Escrow, Inc.

15. ADDITIONAL ESCROW CONDITIONS AND INSTRUCTIONS

The signatories to these escrow instructions hereby direct Escrow Holder to also comply with the following:

A. Escrow Funds.    All funds received in this escrow may be deposited with funds from other escrows in a general non-interest earning trust account in any state or federal bank of Escrow Holder's choosing. No interest shall be paid to the party depositing money with Escrow Holder. The parties recognize that the FDIC insurance on this account may not be sufficient to cover all of their specific deposit, but request that Escrow Holder maintain all funds in such account. All disbursements shall be made by Escrow Holder's check on this account.

B. Fees and Expenses.    Buyer/Transferee agrees to pay Escrow Holder's customary and reasonable charges and fees and all other costs and expenses incurred by Escrow Holder on behalf of Buyer/Transferee. Escrow Holder may, in Escrow Holder's discretion, charge additional fees to the Buyer/Transferee for services which are beyond those usual in this type of escrow, attorney consultation fees, and any special courier fees above the standard courier use and charge those costs to the responsible Parties.

If, for any reason, Escrow Holder is required to appear in and/or defend any litigation, arbitration or administrative proceeding concerning this escrow as a party or a witness, the parties jointly and severally shall pay Escrow Holder for all reasonable costs, expenses and losses incurred by Escrow Holder in such matter, including Escrow Holder's reasonable attorney's fees.

If, in Escrow Holder's discretion, Escrow Holder deems it necessary to obtain legal advice regarding any issue in this escrow, the parties, jointly and severally, shall reimburse Escrow Holder for any reasonable fees and expenses incurred.

C. Disclosures. Escrow Holder has no responsibility to give any disclosure not required by law to be given by an escrow agent.

Seller's Initials  _____ _____ _____          Buyer's Initials  _____

D. **Instructions.** Escrow Holder need comply only with the written instructions deposited in this escrow. If Escrow Holder receives any form of contract pertaining to the transaction on which this escrow is based, Escrow Holder has no responsibility to enforce or comply with the terms of it except as described in these instructions. A signature on these instructions and any document concerning this escrow means that the signatory has read, understands and approves the instruction or document. Escrow Holder has no responsibility to determine the validity or sufficiency of any document or signature on any document deposited in this escrow, unless further written Escrow Instructions to do so are received and the additional escrow fees are deposited. Any purported oral instructions, amendment, supplement, modification, notice or demand deposited with Escrow Holder by the parties or either of them shall be ineffective and invalid. The Escrow Instructions and supporting documents may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document. The parties acknowledge and understand that you, as Escrow Holder, are not authorized to practice the law nor does Escrow Holder give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these Escrow Instructions. Escrow Holder shall not comply with any notice, demand or instruction that is not in writing. Escrow Holder may furnish copies of the escrow instructions and closing statements to real estate brokers and liquor license brokers representing the parties to this escrow, the Department of Alcoholic Beverage Control, and any lender to a party.

E. **Conflicts in Escrow Instructions; Disputes.**    If Escrow Holder receives any conflicting notices, instructions or demands, or cannot close this escrow for any reason, in Escrow Holder's reasonable sole discretion and without any liability, and without concern over the merits of any disputes between the parties, Escrow Holder may take any reasonable action Escrow Holder deems appropriate, including no further action in this escrow until the conflict is resolved, or the bringing of an interpleader or other litigation. The parties, jointly and severally, will pay promptly on demand any reasonable costs, expenses and losses incurred by Escrow Holder in complying with this instruction, including Escrow Holder's reasonable attorney's fees. Escrow Holder's reasonable fees and the costs incurred in this escrow may be taken from any monies on deposit with Escrow Holder; the parties assume responsibility for determining liability for payment between themselves.

F. **Attorney's Fees.**    If any legal action, arbitration or other proceeding is brought relating to these instructions or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of the transactions involved in these instructions, the successful or prevailing party shall be entitled to recover reasonable costs incurred, including reasonable attorney's fees. In any collection of monies due hereunder without litigation, the collecting party shall be entitled to its reasonable costs incurred, including reasonable attorney's fees.

G. **Closing; Cancellation; Payment of Fees and Costs.**    Escrow Holder shall close the escrow as soon as possible unless Escrow Holder receives a written notice of cancellation. On receipt at any time of a notice of cancellation, Escrow Holder shall mail a copy to all other parties at the addresses on these instructions. In the event of cancellation, Escrow Holder may take from any monies on deposit with Escrow Holder any sums necessary to pay all fees and costs incurred in this escrow. It is further understood that all notices, demands and instructions must be in writing and executed by all parties

H. **Corrections.** In the event monies are disbursed incorrectly by Escrow Holder for any reason, each party agrees to cooperate with Escrow Holder and to promptly return to Escrow Holder any monies disbursed incorrectly to him/her/it immediately upon notice from Escrow Holder. If any legal action, arbitration or other proceeding is brought to collect monies incorrectly disbursed, the successful or prevailing party shall be entitled to recover costs incurred, including reasonable attorney's fees. Escrow Holder is further instructed and authorized to make any corrections necessary regarding perfecting any and all premise addresses, corrections of any and all names and any and all other necessary documents that need to be re-recorded to reflect any changes, without further instruction from either parties.

I. **Forms.** The parties understand the forms used by Escrow Holder are generally in use in the industry, and assume the responsibility of making certain those forms and the completion of them by Escrow Holder accurately describes the intended transaction.

Seller's Initials _____      Buyer's Initials 

J.  **Venue for Litigation.** All rights and duties of the parties hereunder shall be governed by the laws of the State of California, and any litigation, arbitration or other proceeding brought regarding this escrow shall be brought in a court or tribunal of appropriate jurisdiction closest to San Joaquin County, California.

K.  **Time is of the Essence.**     The parties shall cooperate with Escrow Holder in carrying out the escrow instructions they deposit with Escrow Holder and completing this escrow. The parties shall deposit into escrow, upon request, any additional funds, instruments, documents, the Department of Alcoholic Beverage Control required documents, instructions, authorizations, or other items that are necessary to enable Escrow Holder to comply with demands made to Escrow Holder by third parties, or to otherwise carry out the terms of their instructions and close this escrow. Both parties further understand that "time is of the essence" and will facilitate any needed documents in a timely manner. Notwithstanding anything to the contrary, and in addition to any other contigency or condition, Buyer's/Transferee's obligation to purchase the license(s) shall be subject to the ABC approving the transfer to Buyer's/Transferee's and Seller's/Transferor's performance.

L.  **Destruction of Escrow File.** Escrow Holder may destroy and dispose of all documents in this escrow after five (5) years of closing or cancellation of the escrow without liability or further notice to the parties. In the event of any dispute or litigation the escrow file will remain available and intact until such time as the matter has been resolved.

**Buyer/Transferee and Seller/Transferor acknowledge that they have read, understand, accept, approve and hereby create, execute, and enter into the foregoing escrow and instructions, each party acknowledges receipt of a copy hereof.**

SELLER:                                           BUYER:

PACIFIC THEATRES EXHIBITION CORP                  AAB CINEMAS, LLC
A CALIFORNIA CORPORATION                          A DELAWARE LIMITED LIABILITY COMPANY

By:                                               By:

PRINT NAME AND TITLE                              Rick Caruso President AAB Cinemas LLC
                                                  PRINT NAME AND TITLE

Seller's Initials  _____ _____                 Buyer's Initials  _____

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING SALE OF ESTATE'S RIGHT, TITLE AND INTEREST IN LIQUOR LICENSES (GLENDALE AND GROVE), FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; AND (B) APPROVING OVERBID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF EDWARD M. WOLKOWITZ IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 19, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Erin N Brady** erin.brady@hoganlovells.com, cindy.mitchell@hoganlovells.com;tracy.southwell@hoganlovells.com
- **William S Brody** wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com
- **Philip A Gasteier** pag@lnbrb.com
- **Marsha A Houston** mhouston@reedsmith.com
- **Brian D Huben** hubenb@ballardspahr.com, carolod@ballardspahr.com
- **William W Huckins** whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com
- **Jeffrey Huron** jhuron@dykema.com, ebailon@dykema.com;cacossano@dykema.com;DocketLA@dykema.com
- **Jeffrey S Kwong** jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- **Kristen N Pate** ggpbk@ggp.com
- **John N Tedford** jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Edward M Wolkowitz (TR)** emwtrustee@lnbyb.com, ewolkowitz@iq7technology.com;ecf.alert+Wolkowitz@titlexi.com

**2.  SERVED BY UNITED STATES MAIL**: On **August 19, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

U.S. Trustee
United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Counsel for AMC
Jennifer L. Oden, Esq.
SOLOMON, SALTSMAN & JAMIESON
A Partnership of Corporations
426 Culver Boulevard
Playa Del Rey, California 90293

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| 1 | Counsel for Interested Party<br>Seth Goldman<br>Munger, Tolles & Olson LLP |
| 2 | 355 South Grand Avenue, Suite 3500<br>Los Angeles, California  90071-1560 |
| 3 | ☐ Service List served by U.S. Mail attached |
| 4 | |

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 19, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY OVERNIGHT MAIL**
The Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐ Service List served by U.S. Mail attached

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 19, 2021 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**