PHILIP A. GASTEIER (SBN 130043)
JEFFREY S. KWONG (State Bar No. 288239)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: PAG@LNBYG.COM; JSK@LNBYG.COM
Attorneys for Edward M. Wolkowitz,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re:

PACIFIC THEATRES EXHIBITION CORP., et al.,

Debtors and Debtors in Possession.

☒ Affects all Debtors

☐ Affects Pacific Theatres Exhibition Corporation only

☐ Affects Pacific Theatres Entertainment Corporation

☐ Affects Pacific Cinemas Corporation only

☐ Affects Glendale Americana Theatre, LLC only

☐ Affects ArcLight Cinema Company only

☐ Affects ArcLight Visions, Inc. only

Chapter 7

Lead Case No.: 2:21-bk-15007-BB

Jointly administered with:
2:21-bk-15008-BB (Pacific Theatres Entertainment Corporation)
2:21-bk-15009-BB (Pacific Cinemas Corporation)
2:21-bk-15010-BB (Glendale Americana Theatre, LLC)
2:21-bk-15011-BB (ArcLight Cinema Company)
2:21-bk-15012-BB (ArcLight Visions, Inc.)

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING SALE OF ESTATES' RIGHT, TITLE AND INTEREST IN VISA/MASTERCARD CLASS ACTION CLAIM, AND (B) APPROVING OVERBID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF EDWARD M. WOLKOWITZ IN SUPPORT**

DATE: January 10, 2024
TIME: 10:00 a.m.
PLACE: Courtroom "1539"
255 East Temple Street
Los Angeles, California 90012

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND PARTIES IN INTEREST:**

Edward M. Wolkowitz, the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estates (the "Estates") of Pacific Theatres Exhibition Corp., Pacific Theatres Entertainment Corporation, ArcLight Cinema Company, Arclight Visions, Inc., Glendale Americana Theatre, LLC, and Pacific Cinemas Corporation, the debtors herein (collectively, the "Debtors"), hereby files this motion (the "Motion") for entry of an order of the Court:

(A)    pursuant to 11 U.S.C. § 363(b), authorizing the Trustee to sell the Estate's right, title and interest in the claims and causes of action described in the putative consolidated class action brought against Visa, Inc., MasterCard, Inc. and certain other Defendants in the Litigation entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 05-MD-1720 (MKB)(JO)) (the "Litigation") pending in the United States District Court for the Eastern District of New York (the "Claim") to Clearwater Recovery Partners LLP (the "Buyer"), pursuant to and as further described in the Assignment Agreement dated November 6, 2023, a true and correct copy of which is attached as **Exhibit "1"** to the Declaration of Edward M. Wolkowitz annexed hereto (the "Wolkowitz Declaration"), or on equivalent terms to a successful overbidder; and

(B)    approving the overbid procedures described in this Motion (the "Overbid Procedures").

Pursuant to the Agreement, the Buyer has agreed to purchase the Estates' right, title and interest in the Claim for the purchase price of $75,000.00.

Pursuant to this Motion, the Trustee seeks authority to sell the Claim to the Buyer, subject to overbid, and in accordance with the terms and conditions set forth in the Agreement. The Trustee also seeks Court approval of the Overbid Procedures described in the Motion in connection with the proposed sale of the Claim, which the Trustee believes will maximize the price ultimately obtained for the Claim and still protect the Estates from parties who may wish to bid on the Claim but who are ultimately unable to consummate a purchase of the Claim.

The Motion is based upon 11 U.S.C. § 363, Bankruptcy Rules 2002 and 6004, and Local Bankruptcy Rules 2002 and 6004-1, the accompanying Memorandum of Points and Authorities, the Wolkowitz Declaration submitted in support of the Motion, the entire record of the Debtors' bankruptcy cases, the statements, arguments and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at, or prior to, the hearing on the Motion.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1. finding that the notice given by the Trustee in connection with the sale of the Claim and the hearing on the Motion is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

2. granting the Motion in its entirety;

3. approving the Overbid Procedures;

4. authorizing the Trustee to sell the Claim to the Buyer (or to a successful overbidder) pursuant to the terms and conditions set forth in the Agreement;

5. finding that the Buyer (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

6. authorizing the Trustee to execute and deliver any and all documents and take such actions as may be reasonably necessary to consummate the sale of the Claim;

7. waiving the provisions of Bankruptcy Rule 6004 (h); and

8. granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: November 20, 2023

EDWARD M. WOLKOWITZ,
CHAPTER 7 TRUSTEE

By: *<u>/s/ Philip A. Gasteier</u>*
Philip A. Gasteier
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Edward M. Wolkowitz, Chapter 7 Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of this case and proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this sale motion are (i) Sections 105(a), 363(b) and (m) of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 6004 (a), (c), (f) and (h), 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, and (iii) Local Bankruptcy Rules 6004-1 and 9013-1.

**II.**

**INTRODUCTION**

Edward M. Wolkowitz, the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estates (the "Estates") of Pacific Theatres Exhibition Corp. ("Exhibition"), Pacific Theatres Entertainment Corporation, ArcLight Cinema Company, Arclight Visions, Inc., Glendale Americana Theatre, LLC, and Pacific Cinemas Corporation, the debtors herein (collectively, the "Debtors"), hereby files this motion (the "Motion") for entry of an order of the Court pursuant to 11 U.S.C. § 363(b), authorizing the Trustee to sell the Estates' right, title and interest in the claims and causes of action described in the putative consolidated class action brought against Visa, Inc., MasterCard, Inc. and certain other Defendants in the Litigation entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 05-MD-1720 (MKB)(JO)) (the "Litigation") pending in the United States District Court for the Eastern District of New York (as more specifically described in the Assignment Agreement, as defined below, the "Claim"), to Clearwater Recovery Partners LLP (the "Buyer"), pursuant to the Assignment Agreement dated November 6, 2023 (the "Assignment Agreement"), a true and correct copy of which is attached as **Exhibit "1"** to the Declaration of Edward M. Wolkowitz

annexed hereto (the "Wolkowitz Declaration"), or on equivalent terms to a successful overbidder.

The proposed sale is subject to higher and better bids. The Trustee requests that the Court approve the proposed Overbid Procedures, and that, in the event bids are received, an auction proceeding be conducted at the direction of the Court immediately prior to the hearing on the sale. The Trustee submits that the price to be obtained for the Claim is within the range of fair market value and that the sale is in the best interests of the creditors of the estate. The Trustee believes all prerequisites for approval of the sale under applicable provisions of the Bankruptcy Code have been satisfied and therefore urges the Court to grant the Motion.

## III.

## FACTUAL SUMMARY

### A. Background.

1. On June 18, 2021 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 7 of the Bankruptcy Code. On or shortly after the Petition Date, Edward M. Wolkowitz was duly appointed as the Chapter 7 Trustee of the Debtors' Estates.

### B. The Claim.

2. The Debtors' Schedules of Assets and Liabilities (the "Schedules"), which were filed by the Debtors on the Petition Date, reflect that Exhibition had leased and operated theatres in various locations, but due to the pandemic as of the Petition Date was no longer actively operating theatres.

3. Among the assets scheduled by Exhibition was a claim as "a class member in the class action lawsuit captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MOL 1720 (MKB)." None of the other Debtors listed such a claim, and none of the other Debtors are believed to have engaged in business operations that would have resulted in them being such a class member. However, the Buyer requested that any such claim held by any other Debtor be included in the Assignment Agreement.

4. The nature and scope of the Claim proposed to be sold are described in detail in the Assignment Agreement, a true and correct copy of which is attached hereto and made a part hereof as **<u>Exhibit "1."</u>**

5. A description of the Litigation and a copy of the approved Settlement Agreement in the Litigation can be accessed at the Litigation website at: https://www.paymentcardsettlement.com/en .

6. As there described, the "lawsuit is about claims that merchants paid excessive fees to accept Visa and Mastercard cards because Visa and Mastercard, individually, and together with their respective member banks, violated the antitrust laws. The settlement creates the following Rule 23(b)(3) Settlement Class: All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019, except [exclusions described therein]."

7. Per the website, no deadline for filing claims has yet been set; the parties are currently preparing for administration of the claims process.

8. The Trustee has communicated with a number of parties who have expressed interest in purchasing the Claim, including those who have represented that they have purchased numerous such claims, as well as parties who engage in the purchase of assets of bankruptcy estates. The Trustee identified the Buyer as presenting the highest firm offer. The Trustee anticipates that others may consider bidding.

**C. <u>Proposed Sale Of Estates' Right, Title And Interest In The Claim</u>.**

9. Pursuant to the Assignment Agreement, the Trustee has agreed to sell, and the Buyer has agreed to purchase, the Estate's right, title and interest in the Claim for the purchase price of $75,000.00 (the "<u>Purchase Price</u>").

10. Subject to Court approval, the Trustee proposes to sell the Claim to the Buyer, subject to overbid, and in accordance with the terms and conditions set forth in the Assignment

Agreement.

11. The salient terms of the proposed sale of the Claim to the Buyer are summarized below[1]:

a. ***Purchase Price*:** The Buyer shall purchase the Claim for the Purchase Price of $75,000.00 (subject to overbid).

b. ***Court Approval/Effective Date*:** The Assignment Agreement is contingent on entry of an order of the Bankruptcy Court approving the Assignment Agreement, authorizing the sale of the Claim to Buyer, and authorizing the Trustee to take all actions necessary to close the sale in accord with its terms (herein, the "Approval Order"), and shall be effective as of the date of entry of the Approval Order or, if the Bankruptcy Court denies waiver of the stay of the Approval Order, the date of expiration of any stay of the Approval Order (as applicable, the "Effective Date").

c. ***Closing:*** Closing of the sale ("Closing") will be within two business days after satisfaction of conditions to closing. The Purchase Price shall be payable at Closing. At Closing, the Trustee will deliver to the Buyer a Limited Authorization to Obtain Transactional Data, in the form attached as Exhibit A to the Assignment Agreement, and a Notice of Transfer of Assignment of Rights, in the form attached as Exhibit B to the Assignment Agreement.

d. ***Sale Subject To Overbid At Auction:*** The sale of the Claim shall be subject to overbid, in accordance with the overbid procedures described below or as otherwise approved by the Bankruptcy Court (the "Overbid Procedures"), at an auction of the Claim (the "Auction") to be conducted by the Trustee at the time of the hearing on this Motion ("Sale Hearing"), or as otherwise directed by the Court.

---

[1] The following is a summary of the principal terms of the proposed sale of the Claim and is not intended to be a comprehensive recitation of the terms and conditions set forth in the Assignment Agreement. To the extent there is any conflict between the summary set forth herein and the Assignment Agreement, the Assignment Agreement shall control.

**D. The Proposed Overbid Procedures.**

12. While the Trustee is prepared to consummate a sale of the Claim to the Buyer, the Trustee is also interested in obtaining the maximum price for the Claim. Accordingly, the Trustee required that any sale of the Claim be subject to better and higher bids. However, to induce the Buyer to submit a formal "stalking horse" offer to purchase the Claim, the Trustee agreed with the Buyer to request approval of a minimum bid increment, and further requests that certain Overbid Procedures be implemented in connection with the sale of the Claim.

13. Based on the foregoing considerations, the Trustee seeks Court approval of the Overbid Procedures described below in connection with the proposed sale of the Claim:

a. ***Overbid Requirements.*** Any party interested in submitting an overbid for either of the Licenses included in the License Rights ("Overbid") must, not later than 72 hours before the Sale Hearing, *i.e.*, 10:00 a.m. January 8, 2024 (the "Overbid Deadline"), deliver such Overbid in writing to counsel for the Trustee (Philip A. Gasteier, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, Email: PAG@LNBYG.com, Facsimile: (310) 229-1244), in accordance with the requirements set forth below:

i. The purchase price for the Claim in any Overbid must be in the sum of at least $80,000.00. Any Overbid must otherwise be on the same or better terms and conditions as set forth in the Agreement.

ii. Each party submitting an Overbid must, by the Overbid Deadline: (i) deliver an executed purchase or assignment agreement setting forth the terms of the purchase, containing the same or better terms and conditions as set forth in the Assignment Agreement, as determined by the Trustee in his sole discretion, (ii) deliver to counsel for the Trustee proof of committed funds available to the bidder sufficient to enable such bidder to consummate the purchase of the Claim, which proof shall be in the form of proof of funds on deposit, a letter of credit, or other form acceptable to the Trustee in the Trustee's sole discretion, and disclose any relationship to the Debtor or the Trustee. In the event that (i) the bidder fails

to deliver an executed purchase or assignment agreement, (ii) the bidder fails to timely provide proof of committed funds, or (iii) the Trustee determines, in his sole discretion, that the proof of funds provided to Trustee by a bidder is unacceptable, the Trustee may, at his sole discretion, disqualify such bidder from participating in the Auction.

b. ***Bidding At Auction.*** If at least one qualified bidder who has submitted an Overbid appears at the Auction, the Trustee shall designate what he determines, in his reasonable judgment, to be the best and highest Overbid received for the Claim to be the leading bid at the Auction. Thereafter, the Trustee shall solicit better and higher bids for the Claim, in bidding increments of at least $5,000, from the qualified bidders participating in the Auction (including the Buyer, if it chooses to participate) until the best and highest bid for the Claim has been determined by the Trustee. The qualified bidder who submits the second best/highest bid for the Claim at the Auction shall be designated as the backup bidder.

c. ***Backup Bidder:*** In the event that the Buyer or the successful overbidder cannot timely complete the purchase of the Claim, the Trustee shall be authorized to proceed with the sale of the Claim to the backup bidder (if one is designated at the Auction) without further notice, hearing or order of the Court.

**E. Liens And Potential Tax Consequences From Sale.**

14. The Trustee is not aware of any valid liens, claims or interests against the Claim. The Claim is a claim under a class action asserting anti-trust violations, and is believed to be a commercial tort claim not subject to any perfected security interest or lien.

15. The Trustee does not believe there will be any negative tax consequences for the Estate arising from the proposed sale of the Claim.

**F. Distribution To The Exhibition Estate.**

16. The Trustee believes that the proposed sale of the Claim will generate net proceeds of at least $75,000.00. Given the nature of the Claim and of the Debtors’ affairs, all of such proceeds will be allocated to the Exhibition Estate.

## IV.

## ARGUMENT

### A. GOOD CAUSE EXISTS TO APPROVE THE PROPOSED OVERBID PROCEDURES

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") govern the scope of the notice to be provided in the event a trustee elects to sell property of the estate under 11 U.S.C. § 363; however, with respect to the procedures to be adopted in conducting a sale outside the ordinary course, Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and requires only that the trustee provide an itemized list of the property sold together with the prices received upon consummation of the sale. Fed. R. Bankr. Proc. 6004(f).

Neither the Bankruptcy Code nor the Bankruptcy Rules contain specific provisions with respect to the procedures to be employed by a trustee in conducting a public or private sale. Nonetheless, as one Court has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Additionally, courts have long recognized the need for competitive bidding at hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*

The Trustee believes that the proposed Overbid Procedures will maximize the price ultimately obtained for the Claim while still protecting the Estate from parties who may wish to bid on the Claim but who are ultimately unable to consummate a purchase of the Claim. The Overbid Procedures serve numerous legitimate purposes. Among other things, the Overbid Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) eliminate from consideration purchasers who would waste the Estate's time because they would not have the financial ability to consummate a purchase of the Claim; and (iii) ensure that the

highest possible price is obtained for the Claim. Accordingly, the Trustee submits that approval of the proposed Overbid Procedures is in the best interests of the Estate and creditors.

Local Bankruptcy Rule 6004-1 provides that a hearing on a motion to establish procedures for the sale of assets may be scheduled on not less than seven (7) days' notice. The notice must describe the proposed procedures, describe the purchase agreement, describe the prior marketing effort and provide that opposition may be filed on or before one (1) day prior to the hearing. LBR 6004-1(b)(2). Copies of the Notice of Motion and Motion, which comply with LBR 6004-1(b)(2), are being served on all parties to be served under the order limiting notice, entered August 11, 2021 [Docket #46] the Debtors and their counsel, the creditors holding the 20 largest unsecured claims in the Debtors' cases, any party against whom direct relief is sought by this Motion, all parties requesting special notice, and the Office of the United States Trustee via first-class mail. Notwithstanding the provisions of Local Bankruptcy Rule 6004-1, which allow a hearing on a bidding procedures motion to be scheduled on notice of only seven (7) days, the Trustee is filing and serving the Notice of the Motion with at least twenty-one (21) days' notice before the Sale Hearing.

**B. <u>THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE</u>**

**1. <u>The Trustee Has Complied With All Applicable Notice Requirements</u>.**

Section 363(b)(1) provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

Bankruptcy Rule 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Bankruptcy Rules 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section 363(b)(2) of the Bankruptcy Code. Fed. R. Bankr. P. 6004(a). Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice. Fed. R.

Bankr. P. 2002(a)(2). Bankruptcy Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. It also provides that the notice of sale or property is sufficient if it generally describes the property. Fed. R. Bankr. P. 2002(c)(1). Bankruptcy Rule 2002(k) requires that the notice be given to the United States Trustee. Fed. R. Bankr. P. 2002(k).

In addition, Local Bankruptcy Rule 6004-1 requires that the Notice contain the information specified in Local Bankruptcy Rule 6004-1(c)(3) and that an additional copy of the Notice be submitted to the Clerk of the Bankruptcy Court together with a Form 6004-2 at the time of filing for purposes of publication. L.B.R. 6004-1(c)(3) and (f).

The Trustee has complied with all of the above provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. The Trustee has complied with Bankruptcy Rules 6004(a) and 2002(a)(2), (c)(1), (i) and (k), as well as Local Bankruptcy Rule 6004-1(c)(3), because the notice of the Motion that has been filed contemporaneously herewith (the "Notice") includes all of the required information, including, without limitation, the date, time and place of the Auction and Sale Hearing and the deadline for objecting to this Motion, and has been served on the Debtors and their counsel, the creditors holding the 20 largest unsecured claims in the Debtors' cases, any party against whom direct relief is sought by this Motion, all parties requesting special notice, and the Office of the United States Trustee. The Trustee has also complied with the requirements of Local Bankruptcy Rule 6004-1(f) because the Trustee has filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court for purposes of publication.

**2.      The Sale Of The Claim Should Be Approved Because Good Business Reasons Exist, The Purchase Price For The License Rights Is Fair And Reasonable, And The Proposed Sale Is In The Best Interests Of The Estate And Creditors.**

As a general matter, a Court considering a motion to approve a sale under Bankruptcy Code Section 363(b) should determine from the evidence presented before it that a "good

business reason" exists to grant such a motion. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). In addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

(1) the sale is fair and reasonable, *i.e.*, the price to be paid is adequate;

(2) the property has been given adequate marketing;

(3) the sale is in good faith, *i.e.*, there is an absence of any lucrative deals with insiders, and

(4) adequate notice has been provided to creditors.

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re The Landing*, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999). The Trustee submits that the proposed sale of the License Rights, in accordance with the Agreement, satisfies each of these requirements.

a. <u>Sound Business Purpose</u>.

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). The facts pertaining to the sale at issue here amply substantiate the Trustee's business decision that the contemplated sale of the Claim, in accordance with the Agreement, serves the best interests of the Estate and merits the approval of this Court.

The proposed sale of the Claim to the Buyer is anticipated to result in net sale proceeds of at least $75,000.00 On the other hand, if the Trustee is not able to consummate a sale of the Claim to the Buyer (or a successful overbidder) as proposed herein, the Trustee risks being unable to successfully sell the Claim or risks selling the Claim for a substantially lower purchase price.

Based on the foregoing, the Trustee submits that the proposed sale of the License Rights is in the best interests of the Estate and therefore represents a sound exercise of the Trustee's business judgment.

b.    Fair and Reasonable Price.

In order for a sale to be approved under Bankruptcy Code Section 363(b), the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985). The trustee is given substantial discretion in this regard. *Id.* In addition, Courts have broad discretion with respect to matters under section 363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *Wilde Horse Enterprises, Inc.*, 136 B.R. at 841 (*citing In re Chung King, Inc.*, 753 F.2d 547 (7th Cir. 1985)), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988).

Based upon the discussions that the Trustee and his counsel have had with parties potentially interested in purchasing the Claim (who will be notified of this sale), the proposed Purchase Price of $75,000.00 is within the range of the current fair market value of the Claim in an open market. In addition, the proposed Overbid Procedures and Auction process are specifically designed to ensure that the highest price possible is obtained for the Claim. Although the Trustee will not know the results of the Auction (if one is conducted) until the Auction has been completed, the Trustee submits that, based upon the marketing efforts, the Claim will have been exposed to those parties who are most likely to be interested in acquiring the Claim, and the highest and best bid obtained for the Claim (whether it is the bid offered by the Buyer or an overbid submitted by a successful overbidder) will constitute fair and reasonable value for the Claim.

c.    Adequate Marketing.

The Trustee has communicated with a number of parties who have expressed interest in purchasing the Claim, including those who have represented that they have purchased numerous such claims, as well as parties who engage in the purchase of assets of bankruptcy estates. The Trustee identified the Buyer as presenting the highest firm offer. Furthermore, in an effort to maximize the value obtained for the Claim, the Trustee is inviting overbids for the Claim, in accordance with the proposed Overbid Procedures. Based on the foregoing, the Trustee submits that the Claim has been, and will be, adequately marketed.

d. Good Faith.

When a Bankruptcy Court authorizes a sale of assets pursuant to Bankruptcy Code Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies*, 788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent creditor protections. *Id.* at 150. With respect to the Trustee's conduct in conjunction with the sale of the Property, the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Abbotts Dairies*, 788 F.2d at 147; *Wilde Horse Enterprises*, 136 B.R. at 842.

The Trustee and the Buyer have negotiated the terms of the proposed sale of the Claim, in accordance with the Assignment Agreement, at arms' length and in good faith. The Assignment Agreement is in a form customarily used by the Buyer for such purchases, modified to add provisions customarily used for sales by a chapter 7 Trustee. The Buyer has no affiliation with the Debtor or the Trustee, and is therefore not an "insider" of the Debtor as that term is defined in 11 U.S.C. § 101(31). The Trustee submits that there has been no fraud or collusion in connection with the proposed sale of the Claim. No offer to purchase the Claim received by the Trustee has been ignored, and the Trustee has taken reasonable steps to try to obtain the highest price possible for the Claim. Based on the foregoing, the Trustee submits that the good faith requirement has been satisfied, and that the Buyer (or a successful overbidder) should be deemed a "good faith" purchaser under 11 U.S.C. § 363(m).

e. Accurate and Reasonable Notice.

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D.Pa. 1988). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *Id.*

As set forth in detail in Section IV.B.1 of this Motion, the Trustee has complied with all of the applicable notice provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local

Bankruptcy Rules. Thus, the Trustee submits that the notice of the Motion (and proposed sale of the Claim) should be deemed adequate, accurate and reasonable by the Court.

**IV.**

**CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order:

1. finding that the notice given by the Trustee in connection with the sale of the Claim and the hearing on the Motion is adequate, sufficient, proper and complies with all applicable provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure;

2. granting the Motion in its entirety;

3. approving the Overbid Procedures;

4. authorizing the Trustee to sell the Claim to the Buyer (or to a successful overbidder) pursuant to the terms and conditions set forth in the Agreement;

5. finding that the Buyer (or a successful overbidder) is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

6. waiving the provisions of Bankruptcy Rule 6004 (h);

7. authorizing the Trustee to execute and deliver any and all documents and take such actions as may be reasonably necessary to consummate the sale of the License Rights; and

8. granting such other and further relief as may be necessary or appropriate under the circumstances.

Dated: November 20, 2023

EDWARD M. WOLKOWITZ,
CHAPTER 7 TRUSTEE

By: */s/ Philip A. Gasteier*
PHILIP A. GASTEIER
JEFFREY KWONG
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Edward M. Wolkowitz, Chapter 7 Trustee

**<u>DECLARATION OF EDWARD M. WOLKOWITZ</u>**

I, Edward M. Wolkowitz, hereby declare as follows:

1. I am the duly appointed Chapter 7 Trustee of the bankruptcy estates (the "<u>Estates</u>") of Pacific Theatres Exhibition Corp. ("<u>Exhibition</u>"), Pacific Theatres Entertainment Corporation, ArcLight Cinema Company, Arclight Visions, Inc., Glendale Americana Theatre, LLC, and Pacific Cinemas Corporation, the debtors herein (collectively, the "<u>Debtors</u>"). I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto. I submit this declaration in support of that certain *Chapter 7 Trustee's Motion For Entry Of An Order: (A) Approving Sale Of Estates' Right, Title And Interest In Visa/Mastercard Class Action Claim, And (B) Approving Overbid Procedures* (the "<u>Motion</u>"), to which this declaration is attached. All capitalized terms not specifically defined herein shall have the meanings ascribed to them in the Motion.

2. On June 18, 2021 (the "<u>Petition Date</u>"), the Debtors commenced their bankruptcy cases by filing voluntary petitions under Chapter 7 of the Bankruptcy Code. On or shortly after the Petition Date, I was duly appointed as the Chapter 7 Trustee of the Debtors' bankruptcy Estates.

3. The Debtors' Schedules of Assets and Liabilities (the "<u>Schedules</u>"), which were filed by the Debtors on the Petition Date, reflect that Exhibition had leased and operated theatres in various locations, but due to the pandemic as of the Petition Date was no longer actively operating theatres.

4. Among the assets scheduled by Exhibition was a claim as "a class member in the class action lawsuit captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* MOL 1720 (MKB)." None of the other Debtors listed such a claim, and none of the other Debtors are believed to have engaged in business operations that would have resulted in them being such a class member. However, the Buyer requested that any such claim held by any other Debtor be included in the Assignment Agreement.

5. Pursuant to the Motion, I am seeking an order authorizing the sale of the Estates' right, title and interest in the claims and causes of action described in the putative consolidated

class action brought against Visa, Inc., MasterCard, Inc. and certain other Defendants in the Litigation entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 05-MD-1720 (MKB)(JO)) (the "Litigation") pending in the United States District Court for the Eastern District of New York (as more specifically described in the Assignment Agreement, as defined below, the "Claim"), to Clearwater Recovery Partners LLP (the "Buyer"), pursuant to the Assignment Agreement dated November 6, 2023 (the "Assignment Agreement"), a true and correct copy of which is attached as **Exhibit "1"** hereto, or on equivalent terms to a successful overbidder.

6.      The nature and scope of the Claim proposed to be sold are described in detail in the Assignment Agreement. A description of the Litigation and a copy of the approved Settlement Agreement in the Litigation can be accessed at the Litigation website at: https://www.paymentcardsettlement.com/en. As there described, the "lawsuit is about claims that merchants paid excessive fees to accept Visa and Mastercard cards because Visa and Mastercard, individually, and together with their respective member banks, violated the antitrust laws. The settlement creates the following Rule 23(b)(3) Settlement Class: All persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to January 25, 2019, except [exclusions described therein]."

7.      Per the website, no deadline for filing claims has yet been set; the parties are currently preparing for administration of the claims process.

8.      As Trustee, I have communicated with a number of parties who have expressed interest in purchasing the Claim, including those who have represented that they have purchased numerous such claims, as well as parties who engage in the purchase of assets of bankruptcy estates.  I have identified the Buyer as presenting the highest firm offer. I anticipate that others may consider bidding.

9.      Subject to Court approval, I propose to sell the Claim to the Buyer, subject to overbid, and in accordance with the terms and conditions set forth in the Assignment Agreement. I required that any sale of the Claim be subject to better and higher bids.  However, to induce the

Buyer to submit a formal "stalking horse" offer to purchase the Claim, the I agreed with the Buyer to request approval of a minimum bid increment of $5,000.00. I believe that the proposed Overbid Procedures set forth in the Motion are reasonably designed to promote bidding, and request that they be approved.

10.    I am not aware of any valid liens, claims or interests against the Claim. The Claim is a claim under a class action asserting anti-trust violations, and is believed to be a commercial tort claim not subject to any perfected security interest or lien.

11.    I do not believe there will be any negative tax consequences for the Estates arising from the proposed sale of the Claim.

12.    I believe that the proposed sale of the Claim will generate net proceeds of at least $75,000.00. Given the nature of the Claim and of the Debtors' affairs, all of such proceeds will be allocated to the Exhibition Estate.

13.    The terms of the proposed sale of the Claim, in accordance with the Assignment Agreement, were negotiated at arms' length and in good faith.  The Assignment Agreement is in a form I understand is customarily used by the Buyer for such purchases, modified to add provisions customarily used for sales by a chapter 7 Trustee. To the best of my knowledge, the Buyer has no affiliation with the Debtors or me, and is therefore not an "insider" of the Debtors as that term is defined in 11 U.S.C. § 101(31). There has been no fraud or collusion in connection with the proposed sale of the Claim.

14.    No offer to purchase the Claim received by my counsel or me has been ignored, and I have taken reasonable steps to try to obtain the highest price possible for the Claim.  Based upon the discussions that I and my counsel have had with parties potentially interested in purchasing the Claim (who will be notified of this sale), the proposed Purchase Price of $75,000.00 is within the range of the current fair market value of the Claim in an open market.

///

///

///

///

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of November, 2023, at Culver City, California.

Edward M. Wolkowitz

# EXHIBIT "1"

# ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (the "**Agreement**") is entered into on 6 November 2023 (the "**Agreement Date**"), by and between Edward M. Wolkowitz, solely in his capacity as Chapter 7 Trustee ("**Seller**") for the bankruptcy estate ("**Estate**") of Pacific Theatres Exhibition Corp., Pacific Theatres Entertainment Corporation, Pacific Cinemas Corporation, Glendale Americana Theatre, LLC, ArcLight Cinema Company, and ArcLight Visions, Inc. with IRS Tax Identification Numbers 95-6103191, 95-4464421, 95-4433174, 26-2659626, 95-4721101 and 95-4721100, (collectively the "**Debtors**") and Clearwater Recovery Partners LLP ("**Buyer**"). The lead case is Case No. 2:21-bk-15007-BB, United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"). Seller and Buyer may sometimes be referred to individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

WHEREAS, the Debtors accepted payments for goods and services from customers who effected payment through the Visa and/or MasterCard payment processing networks and, in connection therewith, Debtors may be a potential beneficiary of certain claims and causes of action related to the processing of such payments, associated fees charged by Visa and MasterCard (the "**Interchange Fees**"), network rules and other factors, including but not limited to the claims and causes of action described in the putative consolidated class action brought against Visa, Inc., MasterCard, Inc. and certain other Defendants (as defined in the Litigation (as defined below)) (collectively, the "**Defendants**") entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 05-MD-1720 (MKB)(JO)) (the "**Litigation**") pending in the United States District Court for the Eastern District of New York ("**District Court**");

WHEREAS, Seller may have rights, now or in the future, to claims arising from and/or relating to the Interchange Fees, the Litigation or any related litigation, prosecution or settlement (whether pursuant to the potential settlement contemplated by that certain Superseding and Amended Definitive Class Settlement Agreement of the Rule 23(b)(3) Class Plaintiffs and the Defendants filed in the Litigation on September 18, 2018 (as amended, modified or supplemented as of the Agreement Date, the "**Settlement Agreement**") or any and all such potential settlement funds, trusts or similar structures established by the Defendants) of Debtors' claims and causes of action described in the Litigation and the injuries alleged therein, whether such conduct took place during the class period alleged or sought to be established in the Litigation (which class period currently relates to the time period between January 1, 2004 and January 25, 2019 (the "**Current Class Period**") pursuant to the Settlement) or otherwise (such rights arising from or related to the operative facts, causes of action and/or types of claims for relief within the applicable time period alleged in the Litigation, including all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Seller may be entitled, arising in any way or form, from the claims and causes of action underlying the Litigation, and any rights in regard to any successor or related litigation that may be filed subsequently based on the facts underlying the Litigation, any related or alternative litigation that may be filed subsequently based on the facts underlying the Litigation are, individually and collectively, referred to herein as the "**Claim**"); and

WHEREAS, Buyer desires to purchase from Seller all of the Debtors' right, title and interest arising from and/or relating to the Claim, and Seller desires to sell to Buyer all of Seller's right, title and interest arising from and/or relating to the Claim as provided for in this Agreement (the "**Transaction**").

NOW, THEREFORE, in consideration of the mutual covenants, agreements, representations and warranties contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**TERMS AND CONDITIONS**

1. Sale and Purchase of Transferred Rights. For good and valuable consideration, effective as of the Closing Date, as defined below, Seller hereby irrevocably sells, conveys, transfers and assigns to Buyer, its successors and assigns, all of the Debtors' right, title and interest arising from and/or relating to the Claim and to the extent related thereto: (i) rights to access all trade data, transaction data, invoices, purchase orders, sale orders, proofs of delivery, agreements, instruments, notices, statements, confirmations, correspondence and other documents and data that evidence, create, give rise to or otherwise relate to, refer to or affect the Claim (collectively, "**Transaction Data**"); (ii) all rights to receive damages, penalties, fees, expenses, principal, interest and other amounts in respect of, or otherwise in connection with, the Claim (whether pursuant to the Settlement Agreement or otherwise); and (iii) all other claims, causes of action, choses in action, and rights against the Defendants in the Litigation, their respective affiliates, and any guarantor or other third party relating to or arising from the Claim, together with voting and other rights and benefits arising from, under or relating to any of the foregoing, including, without limitation, all Seller & Debtors' rights to receive cash, securities, instruments and/or other property or distributions issued in respect of the Claim, or otherwise, or issued in connection with any of the foregoing (collectively, the "**Transferred Rights**"). This assignment shall be an absolute and unconditional assignment, is a true sale of the Transferred Rights for the purpose of collection and satisfaction and shall not be deemed to create a security interest. Buyer is not assuming any obligation or liability of Seller in respect of the Litigation, the Claim or the Transferred Rights. Buyer agrees that it will not (without Seller's prior written consent and at Buyer's sole cost and expense), and acknowledges that it has no (and by virtue of this Agreement will not obtain) authority to, commence any action that would require Seller or the Debtors to litigate or participate in any litigation, arbitration, mediation, or other adversarial proceeding arising from and/or relating to the Interchange Fees, the Litigation or the Claim. Should all or any portion of the Transferred Rights not be assignable by Seller to Buyer, then Seller automatically grants to Buyer a one hundred percent (100%) participation interest in all or such portion of the Transferred Rights, in accordance with applicable law, reflecting the transfer to Buyer of a one hundred percent (100%) beneficial interest in all or such portion of the Transferred Rights, including without limitation, voting rights and the full economic benefit and disposition rights with respect to all or such portion of the Transferred Rights. No later than two (2) business days after the satisfaction of the conditions set forth in Section 2, Buyer shall pay to Seller an amount equal to SEVENTY-FIVE THOUSAND Dollars ($75,000.00) (the "**Purchase Price**") in immediately available funds by confirmed wire transfer to Seller's bank account to be provided separately. The date upon which the Purchase Price is paid by Buyer to Seller shall be referred to herein as the "**Closing Date**".

2. Bankruptcy Court Approval. This Agreement is contingent on (a) entry of an order of the Bankruptcy Court approving this Agreement and authorizing Seller to close the sale in accordance with its terms (herein, the "**Approval Order**" and shall be effective as of the date of entry of the Approval Order or, if the Bankruptcy Court denies waiver of the stay of the Approval Order, the date of expiration of such stay (herein, the "**Effective Date**"). If the Bankruptcy Court declines to approve this Agreement, this Agreement shall be null and void. Buyer acknowledges that the approval by the Bankruptcy Court of the sale contemplated in this Agreement shall be subject to overbidding in accordance with bankruptcy law and other applicable statutes, regulations and rules of the Bankruptcy Court. Buyer acknowledges that overbidders may be present at the hearing regarding the motion to approve the sale of the Claim and that the Seller has a duty to (a) attempt to obtain overbids and (b) to sell the Claim to the bidder who submits the best bid. Seller shall proceed expeditiously in requesting and securing a hearing before the Bankruptcy Court for the approval of the sale of the Claim contemplated in this Agreement.

3. Conditions Precedent to Closing.

a. For Seller. Seller's obligation to effect Closing is subject to the following conditions precedent: (i) the Effective Date shall have occurred; and (ii) Seller shall have received the Purchase Price.

b. For Buyer. Buyer's obligation to pay the Purchase Price to Seller is subject to the following conditions precedent: (i) Seller shall have complied, in all material respects, with all covenants required by Seller under this Agreement on or before the Closing Date; and (ii) Buyer shall have received a duly executed copy of this Agreement and a Limited Authorization to Obtain Transactional Data, in the form attached hereto as Exhibit A and Notice of Transfer of Assignment of Rights, in the form attached hereto as Exhibit B, each signed by Seller.

4. Representations and Warranties.

a. Mutual. Each Party hereby represents and warrants to the other that: (i) subject to Section 2, this Agreement has been duly authorized, executed and delivered by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable against it in accordance with its terms; (ii) such Party is duly organized, validly existing and in good standing and has the requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby, and such performance does not constitute a violation of such Party's organizational documents; (iii) neither the execution, delivery or performance of this Agreement nor consummation of the Transaction will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting such Party; (iv) no consent, approval, filing or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by such Party; (v) the Transaction is the product of good faith, arms'-length negotiations for fair value; (vi) it has adequate information concerning the Claim and the Litigation to make an informed decision regarding the sale or purchase of the Transferred Rights and that it has independently and without reliance on the other, and based on such information as it deems appropriate, made its own decision to enter into this Agreement; (vii) it is a sophisticated seller or buyer, as the case may be, with respect to the Transaction with sufficient knowledge and experience in investing in claims of this type to properly evaluate the merits of the Transaction, and it is able to bear the substantial risk associated with the Transaction; (viii) such Party has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement; (ix) other than the Litigation, there is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry pending or threatened against it concerning that could prevent or prohibit it from selling or purchasing the Transferred Rights or from otherwise complying in full with the provisions of this Agreement or, in the case of Seller, that could reasonably be expected to adversely affect the Transferred Rights; and (x) no claims filer, third-party service provider, broker, finder or other entity acting pursuant to its authority or the authority of any of its affiliates is entitled to any commission, fee or other compensation in connection with this Agreement, the Claim or any other Transferred Rights for which the other Party could be responsible. Each Party further acknowledges that the other Party currently may have, and later may come into possession of, information relating to the Interchange Fees, the Litigation or the Transferred Rights that is not known to the other Party and that such information may be material to its decision to enter into the Transaction (as applicable, the "Excluded Information") and has determined to enter into the Transaction notwithstanding its lack of knowledge of the Excluded Information and neither Party shall be liable to the other Party as a result of the non-disclosure or lack of knowledge of the Excluded Information.

b. By Seller. Seller hereby further represents and warrants to Buyer that: (i) Seller is the sole legal and beneficial owner of the Claim and the other Transferred Rights free and clear of any mortgage, pledge, lien, security interest, claim, voting agreements, or encumbrance and the Transferred Rights are not subject to any right of setoff or subordination; (ii) Seller has not "opted out" or otherwise excluded itself or its Claim from the Litigation or any settlement thereof; (iii) Seller has not previously assigned, sold, factored, or pledged, is not currently contractually bound to any third party to assign, sell, factor or pledge, and in the future will not assign,

sell, factor or pledge the Transferred Rights or any legal or beneficial interest therein, in whole or in part or engaged a claim filing service for the Litigation or the Claim; (iv) Seller's tax identification number evidencing or relating to the Transferred Rights, is correct; (v) no payment has been received by or on behalf of Seller in full or partial satisfaction of the Claim or any other Transferred Rights; and (vi) the Claim is the only known antitrust claim that Seller holds against the Defendants in respect of the Litigation.

c. By Buyer. Buyer hereby further represents and warrants to Seller that: (i) there is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry pending or threatened against Buyer concerning the Transferred Rights that could prevent or prohibit Buyer from purchasing the Transferred Rights or from otherwise complying in full with the provisions of this Agreement or that could reasonably be expected to adversely affect the Transferred Rights (other than the Litigation); (ii) Buyer is solvent and has the funds available to pay the Purchase Price; and (iii) Buyer acknowledges that the value of the Claim and the final recovery on the Claim may not be determined with certainty by Seller or Buyer as of the time of execution of this Agreement and that Buyer's recovery on the Claim may or may not exceed the Purchase Price.

5. "As Is, Where Is".

a. Buyer acknowledges that, except for the representations and warranties contained in Section 3 of this Agreement, the Claim is being transferred on an "as is," "where is," and "with all faults" basis. Seller does not and shall not represent or warrant to the accuracy or completeness of the Transaction Data or any other information or documentation provided to Buyer; provided, however, that Seller has made reasonable and good faith efforts to ensure that such information is accurate and complete.

b. Buyer acknowledges that Seller is a bankruptcy trustee and any interest acquired by the Estate in the Claim was acquired for a short period of time due to the bankruptcy case, for the sole purpose of liquidating the Claim for the benefit of the creditors of the Estate.

c. Due to the unique nature of bankruptcy cases, the Seller has not personally audited, investigated or inspected the Claim. Buyer has been given an opportunity to inspect and investigate the Claim, independently and through agents of Buyer’s choosing. Buyer acknowledges that in purchasing the Claim, Buyer is not relying in any manner on the Seller, the Seller’s attorney or any other agents of the Seller or the Estate regarding the characteristics or condition of the Claim or any other aspect of the Claim, and Buyer is not relying in any manner upon any information regarding the Claim provided in any manner by the Seller, the Seller’s attorney or any other agent of the Seller.

6. Limited Power of Attorney; Further Assurances. Seller hereby irrevocably appoints Buyer as its true and lawful attorney in fact and authorizes Buyer to act in Seller's name, place and stead, or otherwise, to demand, sue for, compromise and recover all such sums of money that now are or that hereafter might become due and payable for or on account of the Claim or any other Transferred Rights, and grants to Buyer full authority to do all things necessary to enforce the Claim and all other Transferred Rights, including, but not limited to: (a) file or submit, for Buyer's exclusive benefit, any claim form or similar document with respect to the Transferred Rights; (b) receive distributions or other payments in connection with the Transferred Rights; (c) endorse and deposit into Buyer's account any check or other instrument that may be issued in connection with the Transferred Rights; and (d) agree to less favorable treatment or a lower notional amount for the Claim than other similarly situated claimants. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer and Buyer shall have no obligation to take any action to prove, defend, demand or take any action with respect to the validity or amount of the Claim or otherwise in the Litigation. Seller agrees to (i) (at Buyer's reasonable request and expense) execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be reasonably necessary or appropriate to (a) effect the assignment of the Transferred Rights and all interests therein to Buyer and have

Buyer recognized by Epiq Class Action & Mass Tort Solutions ("Epiq") as owner of the Transferred Rights, (b) use commercially reasonable efforts to assist Buyer to enforce and collect on the Transferred Rights and (c) otherwise effectuate the intent of this Agreement and (ii) promptly forward to Buyer all notices, documents or other information received from the District Court, Epiq, or any other third party with respect to the Transferred Rights. Seller further agrees that if and to the extent that Seller has preregistered information with an Epiq, it will update its submission to provide for the transfer of the Claim and the other Transferred Rights to Buyer including, but not limited to, listing Buyer's name, address, phone number and email address as the contact information with respect to the Claim and the other Transferred Rights. Without limiting the generality of the foregoing, if and to the extent that Epiq or any other claims administrator, counsel for any party in the Litigation, any court of competent jurisdiction, or persons or entities acting in similar respective capacities in any alternative action to the Litigation, do not recognize Buyer as having the requisite standing or authority to file the Claim, in Seller's name or otherwise, then Seller agrees to file the Claim on Buyer's behalf upon written request (and at the sole expense) of Buyer. Seller agrees that it will not take any action with respect to the Litigation or Transferred Rights, including filing any objection relating to the Claim or Litigation, without the Buyer's prior, written consent.

7. Distributions. Seller agrees that in the event Seller receives any payments, recoveries, proceeds, disbursements or distributions with respect to or relating to the Claim or any other Transferred Rights, whether in the form of cash, securities, instruments or other property, Seller will accept the same as Buyer's agent and will hold the same in trust for and on behalf of and for the sole benefit of Buyer, and, at Seller's expense, promptly deliver the same forthwith to Buyer in the same form received (free of any withholding, set-off, claim or deduction of any kind), together with any endorsements or documents necessary to transfer such distributions or payments to the Buyer, within three (3) business days in accordance with Buyer's written instructions.

8. Notices. Any and all communications between the Parties or notices or other information sent in connection with the Transaction must be in writing and sent by hand delivery, overnight courier, facsimile, or electronic mail via the relevant Party contact details listed on the attached Schedule A. All such communications and notices will be (and will deemed to be) effective upon receipt.

9. Survival and Transferability. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and the purchase and sale of the Transferred Rights and shall inure to the benefit of, be binding upon and enforceable by the parties hereto and Buyer's successors and assigns, and Seller agrees that Buyer may sell, transfer or assign the Transferred Rights, in whole or in part, together with all or any portion of the right, title and interest of Buyer in and to this Agreement, and may transfer or assign its rights and obligations pursuant to this Agreement, in whole or in part, without the consent of Seller.

10. Confidentiality. The Parties agree to maintain the confidentiality of the terms of this Agreement, except that the Parties may disclose the terms of this Agreement: (a) to their respective affiliates, and the directors, officers, employees, agents, advisors, counsel and auditors of such parties and such parties' affiliates, (b) in connection with the enforcement of the Parties' respective rights and obligations hereunder, (c) to any banking, regulatory or examining authority, (d) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity, and (e) where the disclosure is required by any law, rule or regulation or other legal process; provided, however, that if any such disclosure is required by the Bankruptcy Court, the disclosing Party shall give the nondisclosing Parties prior notice of, and an opportunity to comment on, the proposed disclosure; provided, further, that Buyer may disclose the Transaction (except for the Purchase Price) to any funding sources, capital partners or investors, or any proposed or actual transferee, assignee, participant, or other entity proposing to enter into contractual relations with Buyer in respect of all or a portion of the Transferred Rights.

11. Governing Law; Venue and Waiver of Jury Trial. This Agreement shall be governed by, and construed in accordance with, the substantive laws of the State of New York without regard to the conflict of law rules thereof. In any action commenced hereunder to enforce one or more provisions of this Agreement, the Parties agree: (a) that venue shall be exclusive to the Bankruptcy Court; (b) to waive the defenses of improper venue and forum non conveniens; (c) to waive the right to a trial by jury in any action or proceeding arising out of this Agreement; and (d) to consent to entry of final rulings, orders and judgments by the Bankruptcy Court.

12. Miscellaneous.

a. Wherever appropriate throughout this Agreement, the singular shall include the plural, the plural shall include the singular, and the masculine shall include the feminine.

b. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

c. This Agreement constitutes the entire agreement between the Parties and supersedes any prior understandings or agreements, written or verbal, between them regarding the subject matter contained herein. This Agreement may be amended, supplemented, modified, or discharged only upon an agreement in writing executed by all of the Parties. In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

d. The Parties agree to bear their own respective costs and expenses for preparing, negotiating, executing and delivering this Agreement and any related documents and consummating the Transaction and neither Party will be responsible for any fee, commission or compensation to any person engaged or retained the other Party to act as a finder, broker, agent or other intermediary in connection with the Transaction.

e. All exhibits and schedules referenced herein shall constitute an integral part of this Agreement.

[Signature to follow on next page]

IN WITNESS WHEREOF, this Assignment Agreement has been executed by the Parties as of the date and year provided above.

SELLER

By:______________________________
Name:
Title: EDWARD M. WOLKOWITZ
TRUSTEE IN BANKRUPTCY

BUYER

By:______________________________
Name: Joshua Tucker
Title: Authorised Signatory

**Schedule A**

**Purchase Price (payable by Buyer to Seller):** **$75,000.00**

**Notices/Wire Instructions:**

Seller's Address for Notices and Delivery:

Levene, Neale, Bender, Yoo & Golubchik LLP
2818 La Cienega Ave.
Los Angeles, CA 90034
United States

Attention: Edward M. Wolkowitz
Email: emwlnbyg.com

---

Buyer's Address for Notices and Delivery:

Clearwater Recovery Partners LLP
1 Gateway Center, Suite #2600
Newark, NJ, 07102
United States

Attention: Joshua Tucker
Email: ops@clearwaterllp.com

---

[Blank page]

EXHIBIT A

Limited Authorization to Obtain Transactional Data

[attached]

LIMITED AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

THIS AGREEMENT (the "**Agreement**") is entered into on 6 November 2023 (the "**Agreement Date**"), by and between by and between Edward M. Wolkowitz, solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Pacific Theatres Exhibition Corp., Pacific Theatres Entertainment Corporation, Pacific Cinemas Corporation, Glendale Americana Theatre, LLC, ArcLight Cinema Company, and ArcLight Visions, Inc., with IRS Tax Identification Numbers 95-6103191, 95-4464421, 95-4433174, 26-2659626, 95-4721101 and 95-4721100 (collectively the "**Sellers**") and Clearwater Recovery Partners LLP ("**Buyer**").

Sellers have assigned to Buyer certain rights to any recovery arising from that certain putative consolidated class action entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 05-MD-1720 (MKB)(JO)) pending in the United States District Court for the Eastern District of New York (the "Claim"). The Claim relates to credit card and debit card transactions occurring at any time since January 1, 2004.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Sellers received payment for goods sold or services provided, to the extent and in such scope as directly relevant to the Claim; and (b) the term "Processors" means Sellers' acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Sellers' Transactional Data, to the extent and in such scope as directly relevant to the Claim.

Sellers hereby direct and authorize all Processors to release and provide to Buyer any and all Transactional Data to the extent and in such scope as directly relevant to the Claim. Sellers hereby authorize Buyer to request, demand, obtain and receive from any source all of Sellers' Transactional Data.

The undersigned have executed this Authorization as of the date set forth above.

**SELLER**

By: ______________________________________________

Name:
Title:

**BUYER**

By: ______________________________________________

Name: Joshua Tucker
Title: Authorised Signatory

EXHIBIT B

Notice of Transfer and Assignment of Rights and Acknowledgment of
Receipt

[attached]

**NOTICE OF TRANSFER AND ASSIGNMENT OF RIGHTS**

To: Claims Administrator of Settlement Arising from *In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation*, Case Number 1:05-md-01720-JG-JO, pending before the Eastern District of New York (the "**Litigation**")

We hereby give notice that pursuant to that certain Assignment Agreement ("**Assignment Agreement**"), executed by and between Edward M. Wolkowitz, solely in his capacity as Chapter 7 Trustee for the bankruptcy estate of Pacific Theatres Exhibition Corp., Pacific Theatres Entertainment Corporation, Pacific Cinemas Corporation, Glendale Americana Theatre, LLC, ArcLight Cinema Company, and ArcLight Visions, Inc. with IRS Tax Identification Numbers 95-6103191, 95-4464421, 95-4433174, 26-2659626, 95-4721101 and 95-4721100 (collectively the "**Sellers**") and Clearwater Recovery Partners LLP ("**Buyer**"), Sellers have absolutely and unconditionally transferred and assigned to Buyer all of Sellers' economic rights, title, and interest in and to, or associated with, or connected in any manner to, any claim in, or recovery or settlement against and settlement arising from the Litigation.

The rights assigned to Buyer include, but are not limited to, Sellers' right to (1) file, amend or compromise a claim in the Litigation; (2) challenge any and all estimates for payment of that claim; (3) communicate with, and receive communications and notices from, third-parties, including the claims administrator; and (4) receive any recovery or settlement paid in connection with the Litigation.

Buyer is now the legal and equitable owner of all economic rights associated with the Litigation. As such, you should deal directly with Buyer or its duly appointed agents on all matters pertaining to Sellers' rights in the Litigation. Further, in accordance with the Assignment Agreement, any and all payments relating to the Litigation should be made payable to Buyer and sent to the following address:

Clearwater Recovery Partners LLP
1 Gateway Center, Suite #2600
Newark, NJ 07102
United States

Attention: Joshua Tucker
Email: ops@clearwaterllp.com

Moreover, any and all correspondence, documents, or any other communications pertaining to the Litigation should be directed to Buyer at the above-listed address.

Dated 6 November 2023.

**SELLER**

By: ______________________________________________

Name:
Title:

**BUYER**

By: ______________________________________________

Name: Joshua Tucker
Title: Authorised Signatory

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, California 90034.

A true and correct copy of the foregoing document entitled **CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING SALE OF ESTATES' RIGHT, TITLE AND INTEREST IN VISA/MASTERCARD CLASS ACTION CLAIM, AND (B) APPROVING OVERBID PROCEDURES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF EDWARD M. WOLKOWITZ IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 20, 2023**, **I** checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kenechi R Agu kagu@kralegal.com
- Ryan W Anderson randerson@gamlaw.com, llofredo@gamlaw.com
- Shaun J Bauman info@thela-lawyer.com
- Erin N Brady erin.brady@hoganlovells.com, cindy.mitchell@hoganlovells.com;tracy.southwell@hoganlovells.com
- William S Brody wbrody@buchalter.com, dbodkin@buchalter.com;IFS_filing@buchalter.com;smartin@buchalter.com
- Andrew Browning abrowning@lntlb.com
- Vincent V Frounjian vvf.law@gmail.com
- Philip A Gasteier pag@lnbyg.com
- David S Hagen davidhagenlaw@gmail.com
- Marsha A Houston mhouston@reedsmith.com, hvalencia@reedsmith.com
- Brian D Huben hubenb@ballardspahr.com, carolod@ballardspahr.com
- William W Huckins whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com
- Jeffrey Huron jhuron@dykema.com, ebailon@dykema.com;slara@dykema.com;DocketLA@dykema.com
- Daniel King dking@theattorneygroup.com, r44432@notify.bestcase.com
- Jeffrey S Kwong jsk@lnbyg.com, jsk@ecf.inforuptcy.com
- Noreen A Madoyan Noreen.Madoyan@usdoj.gov
- James P Menton jmenton@robinskaplan.com, dvaughn@robinskaplan.com
- Kristen N Pate bk@bpretail.com
- William F Salle wfslaw@yahoo.com
- Jeffrey L Sumpter jsumpter1@cox.net
- John N Tedford jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.courtdrive.com
- United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- Abdul Wakil sal@sawlawgroup.com
- Edward M Wolkowitz (TR) emwtrustee@lnbyg.com, ecf.alert+Wolkowitz@titlexi.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**: On **November 20, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐ Service List served by U.S. Mail attached

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 20, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 20, 2023 | D. Woo | */s/ D. Woo* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**